## D. W. MOORE *v.* J. R. STEVENS.

PARTNERSHIP.   *Scope of partner's powers.   Execution of bond.   Interest of firm. Case in judgment.*

P. executed a deed of trust upon his growing crop to secure an indebtedness to the firm of M. & S.   The crop was seized under a writ of sequestration sued out by B. against P.   The latter gave a forthcoming-bond for the products seized, and M. signed the same, individually, as a surety and also procured D. to become a surety thereon, by representing that the bond was given on behalf of the firm of M. & S., who would get the benefit of the products replevied, and who did subsequently receive and sell the same and apply the proceeds to the payment of P.'s debt to them.   S. was not consulted about the giving of the bond.   Upon their own application M. & S. were made defendants to the proceeding in which the writ of sequestration was issued.   A decree was rendered in that suit requiring the defendants to produce the products replevied, or that the obligors in the forthcoming-bond pay to the complainant the assessed value thereof.   The things were not produced and D. was compelled to pay their value.   He thereupon filed a bill against S. to compel the defendant to reimburse him for the money which he had been compelled to pay on the bond.   *Held,* that although M. & S., as a firm, were interested in the property sequestered, and afterwards became parties to the suit, and received the proceeds of the property when sold, yet the bond was not binding on S., as it was not within the power of M. as a partner to bind his firm by the execution thereof.

APPEAL from the Chancery Court of Rankin County.

Hon. T. B. GRAHAM, Chancellor.

In March, 1874, the firm of McLaurin & Stevens, doing business as merchants in the town of Goodman, took from A. F. Polk to one Neville, as trustee for their benefit, a deed of trust upon his crop of cotton and corn to be grown that year on a certain tract of land which he was then cultivating, to secure a debt then due by him to them and a further indebtedness to be contracted during that year.   In October, 1874, John H. Bolling, as the guardian of William W. and Susan A. Wilson, filed a bill in the Chancery Court against A. F. Polk and others, and procured the issuance of a writ of sequestration, which was levied upon the cotton and corn covered by his deed of trust given for the benefit of McLaurin & Stevens.   It was arranged between Polk and McLaurin that the former should, as principal, execute a forthcoming-bond

and retain possession of the cotton and corn, the latter to furnish the sureties on the bond ; and that so much of the cotton and corn thus bonded as might be required should be used in paying Polk's indebtedness to the firm of McLaurin & Stevens. In pursuance of such arrangement McLaurin procured D. W. Moore to become a surety on the bond, and accordingly the bond was given with Polk as principal, and McLaurin and Moore as sureties, the latter, as he claims, having no interest in the matter and being induced to sign the bond by the representation of McLaurin that the firm of Mc-Laurin & Stevens was interested in procuring the release of the cotton and corn, and that the bond was given for the benefit of his firm. Soon after the release of the cotton and corn the same was turned over to McLaurin & Stevens and sold, and the proceeds applied to the payment of Polk's debt to them. McLaurin was the managing member of the firm, and Stevens, who did not reside in Goodman, where the business of the firm was conducted, was not consulted about the giving of the bond referred to.

Upon their own application McLaurin & Stevens were made parties defendant to the suit of Bolling against Polk and others. When that case reached final hearing, in 1880, a decree was rendered requiring the defendants to produce and deliver up the cotton and corn, or that the obligors in the bond pay to the complainant the value thereof, $635. The cotton and corn were not forthcoming, and Moore was compelled to ·pay the assessed value thereof. Thereupon Moore filed the bill in this case against Stevens (McLaurin having died insolvent), stating the facts, asking for a writ of attachment to be levied on the lands of Stevens, who is a non-resident, and praying for an account of the amount due complainant by reason of his payment of the $635, above mentioned, and that a decree be rendered in favor of complainant for the amount so due, and subjecting the defendant's lands to the payment thereof. The defendant demurred to the bill, and the court sustained the demurrer and dismissed the bill.

*L. Brame,* for the appellant.

The true relation between several sureties bound by a written obligation may always be shown by parol evidence. *Smith* v. *Clopton,* 48. Miss. 66. If one surety, in order to induce another to become bound as surety, agrees to indemnify him from all loss, the agreement is valid and will be enforced. *Jones* v. *Letcher,* 13 B. Mon. 363; 2 Bailey, 107. Especially is this true where the object and purpose of the contract of suretyship is to benefit the party making the promise of indemnity. In this case Moore did not deal with McLaurin alone, but with the firm of McLaurin & Stevens. The bond was made for the benefit of the partnership, and Moore became the surety of the firm. It is of no consequence that McLaurin signed his individual name to the bond. In the case of *Wallis* v. *Wallis,* 6 How. (Miss.) 254, several partners were held to be liable on an attachment-bond executed by one member of the firm in his own name, but for the use and benefit of the firm. That was a case at law. It is the boast of a court of equity that it will look through the form of a transaction and afford relief according to the very truth and justice of the case; provided, of course, no established principle of law is violated. This case is clearly distinguishable from *Pickels* v. *McPherson,* 59 Miss. 216, on which the chancellor acted in dismissing the bill. There a partner went entirely outside of the scope of the partnership and undertook to bind the firm by an agreement to collect a note, and it was held that the firm was not liable for his receipt of the money, although it was used in the payment of partnership debts. Here the duty of giving the bond and protecting the interests of the firm in the property seized under the writ of sequestration was strictly within the scope of the partner's authority, and the arrangement was for the benefit of the firm. Having a trust-deed on the property seized, the partners were *sub modo* owners thereof. It was as much the duty of McLaurin to give bond and protect the interests of his firm in respect to this property as it would have been if the goods in the

store had been seized under the writ. He was there as the active business manager of the affairs of the firm. His partner, the moneyed man of the concern, was absent at a distance. Under such circumstances his duty to protect the firm assets and his power to bind his partner in so doing cannot be questioned. Opposite counsel totally misconceive the allegations of the bill on this point. It is not averred that McLaurin had no authority to sign the name of Stevens, or the firm name, to the bond, nor is this true in fact. Moore knew nothing, and cared nothing, about the form in which the bond was to be executed. He only knew, as he alleges, that a brother merchant came to him and requested him to sign a bond about a matter in which his house had a direct interest, and that he complied. This was not done for J. T. McLaurin, but as is distinctly alleged, for the firm ; and, by the arrangement, the firm came into possession of the property and appropriated the same, and afterwards, although being admitted on their application as parties defendant to the suit, they made no defence whatever, but left him with the bag to hold. The facts present a strong case for relief, and the bill is maintainable upon principle and authority. *Wharton* v. *Woodburn,* 4 Dev. & B. 507 ; *Purviance* v. *Sutherland,* 2 Ohio St. 478 ; *Burns* v. *Parish,* 3 B. Mon. 8 ; *Weaver* v. *Tapscott,* 9 Leigh, 424 ; *Hikes* v. *Crawford,* 4 Bush, 19 ; *Butterfield* v. *Hensley,* 12 Gray, 226.

*L. Brame,* made an oral argument also.

*McLaurin & McLaurin,* for the appellee.

It is difficult, indeed impossible, for us to conceive any principle of law — and *equitas sequitur legem* — upon which plaintiff can predicate a suit against Stevens. It cannot be that because the firm of McLaurin & Stevens — long since dissolved — received the cotton and applied the proceeds to the debt of Polk would make Stevens liable in this suit, for this court has decided — and plaintiff's counsel admitted in the Chancery Court — that this would not make him liable. *Pickels* v. *McPherson,* 59 Miss. 216. Stevens is not bound

for contribution, because he was never liable upon the bond to the obligee thereof. *Matthews* v. *Millsaps*, 58 Miss. 564. If McLaurin & Stevens were to indemnify Moore, he should have had an obligation from them, binding them to indemnify him. If he was not to contribute it should have been the same obligation. *Burnett* v. *Millsaps*, 59 Miss. 733. If McLaurin could not bind Stevens by writing — and the plaintiff swears in his bill he could not — how could he bind him by implication? If parties fail to make contracts for themselves equity " will not make contracts for them." *Howell* v. *Bush*, 54 Miss. 445. It is said the Chancery Court will look through the forms of the transaction to the very truth and justice of the case. The court looks to the legal justice of the case, otherwise it would be a court of ethics and not of law. When the court looks through the forms of the transaction there is nothing found to bind Stevens, for, as we have shown by authority, the payment of the proceeds to the firm on Polk's debt did not bind Stevens. From the beginning to the end of the transaction Stevens never assumed any responsibility. Indeed, as the record shows, he was not there. McLaurin and Moore assumed the responsibility of paying the forfeit if the property was not forthcoming. Stevens did not join in that responsibility. Moore swears in the bill that McLaurin had no power to join Stevens in that responsibility by signing the firm name to the bond, and, therefore, Stevens's name was not signed to the bond. How utterly preposterous it is then to contend that, while McLaurin had no power to bind Stevens on the bond to Bolling, he could by implication, or expressly, bind him to indemnify the surety who did sign the bond. What is the difference? If such was the case it would bind Stevens at last — that McLaurin could do indirectly what he could not do directly. And this from one who wants to look directly through the forms of the law.

*R. S. McLaurin*, of counsel for the appellee, argued the case orally.

COOPER, J., delivered the opinion of the court.

It is admitted that if the object of McLaurin in procuring Moore to become surety with him for Polk was merely to release Polk's cotton from the custody of the officer, it was one in which the firm of McLaurin & Stevens had no interest, and that it was beyond the power of McLaurin to impose under such circumstances any obligation whatever upon Stevens; but it is contended that since it is shown by the record that the firm had a mortgage upon the cotton to secure a debt due to it from Polk, and that the bond was executed under a contract between Polk and McLaurin that the cotton should be delivered to the firm and by it sold, and the proceeds applied to the payment of the debt, the suretyship of the complainant was, in fact, for the firm, and in a matter in which one partner was authorized to bind the other by any contract, the result of which was to secure the cotton to the firm. It is well settled that a firm which derives a benefit from a contract or obligation made by one partner alone, does not for that reason become liable on the contract from which the benefit was derived. The liability of the firm, if it exists at all, arises not from the reception of a benefit, but from the contract itself, from the fact that the partner who acts acts for and as agent for the other members, and the contract, though made by one, is the contract of all. It is equally well settled that one partner cannot by reason of any implied authority bind his firm by deed. Neither our own researches, nor those of counsel for the appellant, has discovered any case in which the non-executing partner has been bound by a deed which in itself and of itself has created the liability sought to be enforced. There are cases in which the courts have passed over the deed to enforce a liability which existed independent of the deed — a liability which one partner had a right to incur for and on behalf of the firm. *Tom* v. *Goodrich et al.*, 2 Johns. 213, and *Krafts* v. *Creighton & Woodville*, 3 Rich. 273, were cases of suits by sureties on bonds executed by one partner in his individual name to the United States to secure

the payment of duties on goods imported by the firms. In each case it was determined that the surety had no right of action against any other member than the one executing the bond. In the first case Chancellor Kent said : " The plaintiff executed the bond as Barber's surety, and cannot charge any other person as principal. There is no privity between the parties but what arises from the bond. It would be refining upon the doctrine of implied ' *assumpsits*, and going beyond every case, to consider the surety in a bond as having by that act a remedy at law against those for whom the principal in the bond may have acted as trustee.  *  *  *  We can only look to the principal and surety in the bond to the United States, and to the obligations resulting from that obligation relation, because the money was paid by the plaintiff in discharge of that bond and in exoneration of the personal representatives of Barber, who alone was legally responsible for that debt.  *  *  *  We cannot, in this action, unravel the accounts between the partners ; and to push the implied *assumpsit* beyond the party in the bond may lead to great difficulties, and produce injustice."

In *Krafts* v. *Creighton* it was said : " The bond in this case is not in the partnership name, and it therefore casts no liability on the defendant Creighton. The execution of the bond by Woodville discharged the liability of the firm for the duties, and made the debt legally his own. When the plaintiffs paid it, they paid the money for Woodville, and at his implied request. They can, therefore, have no legal right of action against Creighton & Woodville. If it was necessary to go back to the consideration of the bond to ascertain whether both of the partners, or only the obligor, was liable to it, it would necessarily lead to an investigation and settlement of the accounts of the partners. For, if the partner who executed the bond was in arrears to the firm, it could not be pretended that he would have the right to call on the others to contribute to its payment. This examination the court of law cannot make. It may be that if the plaintiffs, in equity, could show that Wood-

ville is in advance to the firm the amount of the bond, and that he is insolvent, they might make the defendant Creighton liable.''

In *Russell* v. *Anable*, 109 Mass. 72, an attachment had been levied upon the partnership goods of the firm of Dennett & Pottle. A bond was executed for their release, and in its body it purported to be the bond of Erastus Dennett and Charles R. Pottle, who composed the firm. It was subscribed by one of the firm in the firm name of Dennett & Pottle. In an action on it by the obligee it was held that the bond was not the bond of both members, but only that of the one who signed the firm name; that the surety signed upon the implied contract that he was to be bound only when it was executed by both the principals, and as only one had executed it, he was not liable on it.

The cases cited by counsel for the appellant illustrate the rule, which is well settled by a great number of cases, that where the act done, or obligation incurred, was within the scope of the partnership business, then, though it be done by the unnecessary use of a seal, yet if it be done in the partnership name, or on the partnership account, the firm is bound, as where one having authority by the course of business to borrow money for the firm gives a bond to secure its payment. In such cases the firm is bound by the substance of the contract, and its liability is not merged in the bond of the partner. *Wharton* v. *Woodburn*, 4 Dev. & B. 507; *Purviance* v. *Sutherland*, 2 Ohio St. 478; *Sale* v. *Dishman's Exrs.*, 3 Leigh, 548; *Weaver* v. *Tapscott*, 9 Leigh, 425.

So also where a partner transfers by a sealed instrument the personal property of the firm, which might have been sold by parol or by an unsealed transfer, the title passes notwithstanding the fact that the seal was used. *Everett* v. *Strong*, 5 Hill, 163; *Harrison* v. *Sterry*, 5 Cranch, 289; *McCullough* v. *Summerville*, 8 Leigh, 415; *Dubois' Appeal*, 38 Pa. St. 531.

Though McLaurin & Stevens, as a firm, were interested in

the property seized, and afterwards became on their own petition parties to the suit and actually received the proceeds of the property when sold, yet it was not within the power of McLaurin, as a partner, to bind his firm by the execution of the bond. It was not an obligation, which could have been entered into at all except by a sealed instrument, for the statute, which conferred the right on the defendants to replevy the property, required that they should first execute a bond as a condition precedent to its restoration to them. The bond was the contract, and it imposed the liability, which could have been assumed or incurred in no other manner. It does not purport to be the bond of the firm, and it could not have been unless executed by both partners, or by one with the assent of the other, or by a subsequent ratification by the non-executing partner.

We are of opinion that the demurrer was properly sustained, and the decree is affirmed.