MILLEN *et al.*, by next friend, *vs.* GUERRARD, trustee, *et al.*

1. Where a will left certain railroad stock in trust, providing that the income should be paid to a life tenant, with remainder over, dividends, whether in cash or in certificates of indebtedness, are a part of the income, and go to the life tenant.
2. Dividends, whether in cash or bonds or certificates of indebtedness, are the natural increase of stock, and not an accumulation of the *corpus;* nor is this affected by the fact that no dividends are declared on the stock for some time, and when they are declared the amount is unusually large. Therefore, such dividends belong to the life tenant, and not to the remaindermen.

Railroads.   Stock.   Estates.   Wills.   Before Judge FLEMING.   Chatham County.   At Chambers.   September 15th, 1881.

To the report contained in the decision, it is only necessary to add the following:

About the first of June, 1881, the directors of the Central Railroad passed the following preamble and resolutions:

"WHEREAS, the great depression in all business throughout the country, from the year 1873 to 1877, caused so large a falling off in the receipts of the Central Railroad and Banking Company of Georgia as to render it necessary to withhold for the time all dividends from the stockholders, in order to liquidate outstanding indebtedness, and to make such betterments as a revival of business would certainly demand; and

"WHEREAS, renewed prosperity and strict economy in the management of the company's affairs and the use of profits withheld have added to these betterments, consisting of many miles of connecting roads built and purchased, the substitution of steel for iron rails, the purchase of many engines and cars, the establishment of efficient lines of steamships to northern ports, with the requisite wharves, sheds, cotton presses and warehouses, which have added much to the value of the company's property, by enlarging its working capacity, and by giving increased facilities to the public, as well as much economy in the execution of all business connected with the road; and

"WHEREAS, the stockholders have had nothing to represent their dividends and incomes thus withheld and appropriated; therefore, be it

"*Resolved*, That certificates of indebtedness be issued, bearing date July 1st, 1881, to the holders of stock this day of the Central Railroad and Banking Company, at the rate of $40.00 per share, and to the holders of stock of the Southwestern Railroad at the rate of $32.00 per share; the said certificates to be payable in the currency of the United States, at such time as may be determined on by the board of directors of this company. But no certificates shall be called in for payment until July, 1891. Interest at the rate of six per cent. per annum shall be paid on the certificates of indebtedness, on the 1st day of January and July of each year, until the date fixed for their redemption; and notice of such intention to pay shall first be published in one or more of the public gazettes in Savannah, Georgia, three months in advance of date fixed for such payment.

"*Resolved*, That the certificates of indebtedness shall be for $100.00 and the multiples thereof, and when any number of shares shall produce a fraction, that the fraction be paid in cash, or, if the stockholder desires, he shall have the privilege of adding to the fraction a sum of money sufficient to make $100.00, and receive a certificate therefor.

"*Resolved*, That the certificate of indebtedness shall pass only by

transfer on the books of the company, and that the cashier have prepared the necessary books, and that the transfer books be closed during the months of June and December each year, to prepare for the payment of interest due thereon."

Early in the same month (June, 1881,) the following notices were published in the daily papers of the city of Savannah:

"NOTICE TO STOCKHOLDERS.

"SOUTHWESTERN RAILROAD COMPANY,
"MACON, GA., June 4th, 1881.

"Dividend No. 55, of three dollars and fifty cents per share, has been declared, and will be paid the stockholders of this company on and after the twentieth instant. Stockholders receiving their dividends in Macon will be paid at the Central Georgia Bank in this city; those at Savannah, at the Central Railroad Bank of that city.

"Also, a dividend of thirty-two dollars per share in certificates of indebtedness, dated July 1st, 1881, has been declared by the directors of the Central Railroad and Banking Company to the stockholders of this company, payable, at the option of said company, after July, 1891, and bearing interest at six per cent. per annum until paid.

"Certificates will be issued in multiples of one hundred dollars; fractions paid in cash, or the stockholder can add to his fraction money enough to make one hundred dollars, and receive a certificate.

"Notice will be given hereafter of the time when those certificates will be ready for delivery.            W. S. BRANTLY,
                                          *Secretary and Treasurer.*"

"DIVIDEND NOTICE.

"CENTRAL RAILROAD AND BANKING COMPANY,
"SAVANNAH, GA., June 1st, 1881.

"A dividend of four dollars per share from the earnings has been declared by the directors on the capital stock of this company, as held this day, payable on and after the twentieth instant. Also a dividend of $40.00 per share, in certificates of indebtedness, dated July 1st, 1881, payable, at the option of the company, after July 1st, 1891, and bearing interest at six per cent. per annum until paid.

"Certificates will be issued in multiples of one hundred dollars; fractions paid in cash, or the stockholder can add to his fraction money enough to make one hundred dollars, and receive a certificate.

"Notice will be given hereafter of the time when these certificates will be ready for delivery.            T. M. CUNNINGHAM,
                                                    *Cashier.*"

In accordance with these resolutions and notices, John M. Guerrard, as trustee under the will of testatrix, drew from the Southwestern Railroad stock $399.00, cash dividend, and from the Central Railroad stock $160.00, cash dividend, and from the Central Railroad and Banking Company, on account of the stock in both of said roads, certificates of indebtedness as follows: One for sixteen hundred .dollars ($1,600.00), being 40 per cent. on 40 shares of Central Railroad stock, and one for thirty-six hundred dollars ($3,600.00), and $48.00 in cash, being 32 per cent. on 114 shares of Southwestern Railroad stock, being, in all, five thousand two hundred dollars ($5,200.00) in said certificates of indebtedness, and $48.00, fractional part of said scrip dividend, paid in cash.

The form of the certificates of indebtedness was as follows:

"No. 429.                                                        $1,600.00.
"CERTIFICATE OF INDEBTEDNESS.

This certifies that the Central Railroad and Banking Company, of Georgia, is indebted to John M. Guerrard, trustee under will of Cornelia M. Millen, in the sum of sixteen hundred dollars, payable at the office of the company at any time after the first day of July, eighteen hundred and ninety-one, on giving three months' notice of its intention to pay in one or more of the public gazettes published in Savannah, Georgia, which sum shall bear interest at the rate of six per centum per annum, payable semi-annually on the first day of January and July in each year, until the expiration of the three months' notice for the payment of the principal sum, when the interest shall cease.

This certificate of indebtedness may be transferred in multiples of one hundred dollars on the books of the company at any time (except during the months of June and December of each year) by the party in whose name it is registered, in person, or by attorney duly authorized for that purpose.

No certificate will be issued for less than one hundred dollars.

WM. M. WADLEY, *President.*

T. M. CUNNINGHAM, *Cashier.*
*Savannah, Georgia, July 1st, 1881.*

A bill was filed by the children of George R. Millen, the life usee, who were the remaindermen under the

will of Cornelia M. Millen, the substance of which is stated in the decision. They alleged the facts stated above, claimed the certificates of indebtedness as part of the remainder, charged that the trustee was about to transfer them to the life tenant, and prayed injunction to restrain him from so doing, and that they be decreed to be entitled thereto.

The trustee answered, praying direction, and the life usee answered, claiming the right to the certificates.

The chancellor held the life tenant entitled to the property, and refused the injunction. Complainants thereupon excepted.

WILLIAM D. HARDEN, for plaintiffs in error.

G. C. WHATLEY; A. R. LAWTON; CUNNINGHAM & LAWTON; W. S. BASINGER, for defendants.

JACKSON, Chief Justice.

Certain shares of Central and Southwestern Railroad stock were left by the will of Mrs. Millen to Guerrard, in trust for George R. Millen and his children, the income to be paid to Millen during life and remainder to his children, with contingent remainder over in the event of their death.

After probate of this will, the directors of the Central Railroad Company declared a dividend in certificates of indebtedness (in addition to a cash dividend) of $40.00 per share on the Central and $32.00 per share on the Southwestern stock, the Central Railroad having leased the latter road some years before on certain terms specified in the lease.

The question made in this case is, do these dividends go to George R. Millen, the life-tenant, or to the remaindermen? The will directs the income of the stock to be paid to the life tenant. Are dividends on stock the income of the stock? If not, what are they? They are certainly

no part of the *corpus*.   They do not increase the shares one iota, nor could these dividends have been so applied by the directors as to add to the *corpus*, that is, to increase the stock, because the limit upon the number of shares allowed the company by its charter is exhausted.   These dividends could not be so used as to increase the *corpus*, and hence the directors declared the dividends, and gave them to the stockholders as dividends, and not as *corpus*.

What did the testatrix mean when she gave to George R. Millen for life the income of this stock?   Most clearly she meant the dividends declared by the directors, for there is—there can be—no income from the stock of a railroad company, except the dividends declared thereon. Nor does the testatrix limit the amount or value of this income to be enjoyed for life by the life tenant.   It matters not how little or how large the dividend declared, it is income from the stock, and it goes to the life tenant. No matter in what it be declared, whether in cash or in bonds, no matter whether it be the accumulation of years or of one year, if it be the income from the stock, and not the *corpus*, the stock itself, by the terms of the will, which is the law of this case, it goes to the life tenant. No matter what, therefore, may be the law in respect to cases generally which may arise under this action of the directors of the Central Railroad Company, in this case, under this will, these dividends, in the shape of these interest-bearing certificates, are income, and not *corpus*, and go to the life tenant, and not to the remaindermen.

2. But suppose that the will be not in the case, and that by any sort of deed or instrument of conveyance this stock were the property of one for life and of others in remainder, where would these dividends go—whose property would they then be?

That question will turn on the resolutions of the directors and the Code of this state, that is upon the true meaning and construction of those resolutions and of section 2256 of the Code.

The resolutions show that dividends due these shares of stock had been "withheld" for past years, that the owners of the stock had not received anything "to represent their dividends and income thus withheld," and that therefore these certificates of indebtedness are issued. Clearly, therefore, these certificates represent, as declared on the face of the preamble and resolutions, past dividends withheld, and are declared in lieu of those dividends and that income from this stock which were withheld. It is as much as to say that the income from this stock was made in certain years, but not declared in those years for prudential reasons. Those reasons do not now exist. Therefore this, the income of those years, will be declared as dividends now and be paid now. Suppose it had been declared in cash, would there be a doubt that the cash would be the money of the life tenant? We think not. Suppose it had been declared in bonds on other persons, on the state, or the United States, or a city, or other railroad corporation, would it not go just as cash would have gone? Most certainly it seems to us. What difference, then, can it make if the company gave its own bonds or evidences of debt as dividends representing past income? None logically, so far as we can discern it.

The directors thus calling these certificates of indebtedness dividends, and issuing them as dividends, we come to the question, where do they go under the Code of Georgia, to the life tenant or to the remaindermen?

The Code, section 2256, enacts that, "the natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the *corpus*, such as issue of new stock upon the share of an incorporated or joint stock company, attaches to the *corpus* and goes with it to the remainderman."

Are dividends, though unusually large, because withheld when they might have been declared but for prudential reasons, an extraordinary accumulation of the *corpus*,

Millen *et al.*, by next friend, *vs.* Guerrard, trustee, *et al.*

or are they the natural increase of the property, in the sense of this statute ? We take it that the words, "natural increase" are used in antithesis to the subsequent words, "extraordinary accumulation," and they mean the ordinary accumulation of the property, that is, in case of stock, the ordinary increase of its value by larger dividends declared, whereby it may be worth much more in the income of the holder from it, goes to the life tenant; but any extraordinary increase or accumulation, by donation, or grant from the state of lands or other outside property, will go to the remaindermen. That property thus accumulated, not from the ordinary use of the means of the company, but from extraordinary outside accumulations attaching to the former means or *corpus* of the company and adding to that *corpus* or those means, assimilates with that, becomes part of it, makes it larger and productive of more fruit, and cannot be cut off by the life tenant, but must stand tied to the *corpus*, and with the *corpus* pass to the remaindermen.

But really dividends are the ordinary, the natural, the only natural income or increase of this sort of property. There can be no natural birth from this parent, except dividends be born of her womb. Railroad stock produces that naturally, in the very order of its creation, according to the very law of its existence, breathed into it by the legislature when it became a living entity. Its maker then said to it: "Be fruitful and multiply dividends." So that, according to its organic nature, it makes and distributes dividends, and their birth is no more extraordinary than that of a child from healthy parents, and the issue of large dividends no more extraordinary or unnatural than the birth of twins. We think, therefore, that these terms, natural and extraordinary, are not in the way of carrying into effect the intention of the testatrix and of the directors. (It is proper to remark that the increase of a mother who was a slave was made an exception to this rule in the Code and under the old law.)

Nor are the words, "such as issue of new stock upon the share of an incorporated or joint stock company." They are a mere illustration of extraordinary accumulations. It, the issue of new stock, is not an ordinary increase; it is not a natural increase. In this case it would have been very unnatural, because the law of the creation of this corporation prohibited this issue. The corporation must receive new powers from its maker before it could do this extraordinary, and as it now stands chartered, wholly unnatural and illegal thing. It could not produce new stock, but it could declare any number and amount of dividends.

Besides the *corpus* of this property is the shares of this stock. The only way to accumulate on this *corpus* is to increase these shares. If this corporation had possessed the power to do so, and had carried out that power, then the new stock would have assimilated to the old, become part and parcel of the *corpus*, and could not have been severed from it by the life tenant, but by the Code it would have gone over to the remaindermen.

Nor do we see any other possible way of adding to this *corpus* the old stock, except the issue of new stock. That is the only thing that can accumulate in kind on it and assimilate and become corporate with it. Bonds of the company, or promissory notes of it, or certificates of indebtedness by it, are not accretions to its stock, nor in any legal sense part of its *corpus*. Indeed they are just the opposite. They are burdens upon it. They are debts which the natural fruit of the *corpus* will have to pay, instead of new stock engrafted on the old to produce more fruit.

So that, on mature reflection, we are of the opinion that these certificates of indebtedness, principal and interest, are the property of the life tenant, and the judgment of the court below denying the injunction is affirmed.

Cited for plaintiff in error:   Code, §2256.

For defendant:   1 Bouvier Dic., 695; 60 *Ga.*, 93; 4

Vesey, 800; 10 *Ib.*, 185; 13 *Ib.*, 363; 14 *Ib.*, 66; 1 McClell., 527; 7 Sim., 634; 15 *Ib.*, 473; 16 *Ib.*, 163; 5 Eng. Law and Eq., 164; 31 Beav., 280; 5 Eq. Cas., 238; 6 Allen, 174; 12 *Ib.*, 359; 99 Mass., 101; 101 *Ib.*, 571; 102 *Ib.*, 542; 18 Barb., 646; 30 *Ib.*, 637; 28 Penn., 368; 83 *Ib.*, 256; 64 *Ib.*, 256; 11 Leigh., 595. These cases, collated with much care, make a very useful and instructive history in chronological order from 1799 to 1868 of the English, Massachusetts and New York decisions on the general question of the respective rights of the life tenant and remaindermen to the increase of property.

Judgment affirmed.