MARY KATE GILKEY *vs.* ALBERT W. PAINE and others.

Penobscot. Opinion March 15, 1888.

*Corporation. Dividend. Income. Life-tenant. Remainder-man.*

One who is entitled to the "net annual income" of corporation-stock can rightfully claim all dividends and bonuses distributed among the stockholders which are derived from and represent the surplus earnings of the corporation; but cannot rightfully claim to hold any portion of the capital stock of the corporation which has been purchased by the corporation on credit, and distributed among its stockholders, although such stock, when distributed, is charged to the profit and loss account of the corporation.

ON report.

Bill in equity by the *cestui que trust* against her trustees, praying that the court would require the defendants to transfer to her five

shares of the stock of the Boston & Albany Railroad Company. The facts are sufficiently stated in the opinion.

*Barker, Vose and Barker,* for plaintiff.

This question of extraordinary dividends as between the life-tenant and remainder-man has been considerably discussed by the courts, both in this country and England, and different rules prevail in different localities. In the decisions in our own state the court has been governed generally by the intention of the directors making the dividend when that could be ascertained, and where a stock dividend has been made, intended as such, has given it to capital, but where a dividend of profits, or cash was intended, the court has guarded the right of the party entitled to income without being governed exclusively by the form in which such dividend was declared.

In *Richardson* v. *Richardson,* 75 Maine, 570, the court says, "The decided preponderance of authority probably concedes the point that dividends of stock go to the capital, under all ordinary circumstances. But we are well convinced that the general rule, deducible from the latest and wisest decisions, declares all money dividends to be profits and income belonging to the tenant for life, including not only the usual annual dividends, but all extra dividends or bonuses payable in cash from the earnings of the company."

The early English rule relating to these matters was that extra dividends, or additions to the usual annual dividend whether paid in cash or capital stock, went to the corpus of the trust. *Brander* v. *Brander,* 4 Ves. 801; *Paris* v. *Paris,* 10 Ves. 184; *Witts* v. *Steere,* 13 Ves. 363.

But this rule was abandoned as unjust, and it is now uniformly held that cash dividends, extra dividends or bonuses declared from the earnings of corporations are income and go to the *cestui que trust.* *Price* v. *Anderson,* 15 Sim. 473; *Bates* v. *McKinley,* 31 Beav. 280; *Johnson* v. *Johnson,* 15 Jur. 714; *Wright* v. *Tucket,* 1 Johns. & Hem. 266.

One of the early and much discussed cases in this country is that of *Earp's Appeal,* 28 Penn. St. 368, wherein the court

divided the dividend in the proportion in which it had been earned relative to the testator's death, that prior to his death going to the remainder-man, that subsequent to the life-tenant.

For futher discussion of above case, see *Wiltbank's Appeal*, 3 Am. Rep. 585. This division of dividends has however been substantially abandoned by the courts of this country, and the Pennsylvania Court itself, in the case of *Moss' Appeal*, 24 Am. R. 164, lays down this rule : "As a general rule nothing earned by a corporation can be regarded as profits, until it shall be declared to be so by the corporation itself, acting by its board of managers. The fact that a dollar has been earned gives no stock-holder the right to claim it until the corporation decides to distribute it as profit."

Again in the same case, "But where a corporation, having actually made profits, proceeds to distribute such profits amongst the stock-holders, the tenant for life would be entitled to receive them, and this without regard to the form of the transaction. Equity, which disregards form and grasps the substance, would award the thing distributed, whether stock or moneys, to whomsoever was entitled to the profits."

This rule has been adopted in the following cases : *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Simpson* v. *Moore*, 30 Barb. 638 ; *Vinton's Appeal*, 44 Am. Rep. 116 ; See *Petition of Brown*, 51 Am. Rep. 398.

The earlier Massachusetts cases recognized the intention of the corporations in making the dividend, and decreed accordingly. 10 Gray, 402 ; 9 Pick. 446 ; 6 Allen, 174.

In a long and exhaustive discussion of the rule in *Minot's Case, Minot* v. *Paine*, to be found in the Albany Law Journal, Vol. 33, No. 6. 106, a learned writer, among other thing says, "That the rule in *Minot's Case* is law in Massachusetts, has been repeatedly affirmed. The later cases add however, by way of explanation, that in deciding whether the distribution is a stock or cash dividend, the actual and substantial character of the transaction must be considered, and not its nominal character merely." See *Gifford* v. *Thompson*, 115 Mass. 478.

Among a series of articles recently appearing in the Albany Law Journal, written by Guy C. H. Corliss, a learned writer, upon the subject of "Life-tenant and remainder-man," is one in Vol. 33, No. 22, p. 424, in which he discusses the law applicable to stock dividends at great length, and after reviewing all the leading cases both in this country and England, he very tersely, and, as we think, very appropriately condenses the law upon this subject into the four following rules.

"1. If the dividend is made up of profits, the dividend goes to the life-tenant irrespective of the form in which it is declared."

"2. The life-tenant is entitled to all dividends whether in cash or in stock declared during the existence of his interest, whether they consist of profits which have accrued subsequently to the vesting of the life-estate, or in part of the earnings of the corporation which had accumulated at the time of the devolution upon the life-tenant of his interest in the property."

"3. That in so far as any dividends consist of money derived from an increase in the value of the corporate property, or is derived from any other source than the net earnings of the company, the life-tenant can claim no interest therein."

"4. That not only is it beyond the power of the corporation to bind the life-tenant by dividing net earnings in the form of capital stock, but the life-tenant can always show the true nature and source of the dividend, in spite of any act or declaration to the contrary; and that on the other hand, the remainder-man may prove that a dividend, which apparently belongs to the life-tenant, is the property of the remainder-man."

The only case which seems to be exactly parallel to the one before us is that of *Leland* v. *Hayden*, 102 Mass. 542. In that case the Old Colony Railroad Company, made an extra dividend of forty per cent, twenty of which was made in its own original stock which had been purchased by it and was then in its treasury, like this case, representing its surplus earnings; and in drawing the opinion of the court, the same justice who drew the opinion in *Minot* v. *Paine*, says: "The purchased shares represented cash invested so as to turn an income. If the directors had sold them and divided the avails, there could have

been no doubt that it was a cash dividend." See *Commonwealth* v. *B. & A. R. R.* 142 Mass. 146.

*A. W. Paine*, for the defendants, cited · *Minot* v. *Paine*, 99 Mass. 101; *Daland* v. *Williams*, 101 Mass. 571; *Leland* v. *Hayden*, 102 Mass. 542; *Rand* v. *Hubbell*, 115 Mass. 474; *Gifford* v. *Thompson*, 115 Mass. 478; *Heard* v. *Eldridge*, 109 Mass. 258; *Atkins* v. *Albree*, 12 Allen, 359; *Westcott* v. *Nickerson*, 120 Mass. 410; *Hemenway* v. *Hemenway*, 134 Mass. 446; *Mudge* v. *Parker*, 139 Mass. 153; *Shaw* v. *Cordis*, 143 Mass. 443; *Com.* v. *Boston & A. R. R. Co.* 142 Mass. 146; *Goodwin* v. *Hardy*, 57 Maine, 143; *Richardson* v. *Richardson*, 75 Maine, 570.

WALTON, J. On the 18th day of April, 1880, Sylvanus Rich, of Bangor, died, leaving a will, giving to trustees fifty shares of the capital stock of the Boston and Albany Railroad Company, to be held by them for the benefit of the plaintiff (Mary Kate Gilkey, of Bangor), during her natural life, she to have *"the net annual income thereof"* as fast as it should accrue and be received by the trustees.

At the time of the death of Mr. Rich, twenty-four thousand one hundred and fifteen shares of the capital stock of the railroad company were owned by the Commonwealth of Massachusetts. But in 1882, the railroad company purchased these shares of the Commonwealth, giving in exchange the company's bonds, payable in twenty years, with interest at the rate of five per cent per annum.

Having thus become the owner of these shares, the company voted to distribute, and did distribute, seventeen thousand five hundred and eighty-eight of them among its private stockholders, the distribution being at the rate of one share for each ten shares held by the stockholders. Of these shares, the trustees under the will of Mr. Rich, received five. They then held, in all, fifty-five shares. And they have paid to the plaintiff, not only the income on the original fifty shares, but also the income on the additional five shares. But this does not satisfy

her. She claims that she is not only entitled to the income on these five, shares but to the shares themselves.

We do not think this claim can be sustained. These shares are no portion of the "net annual income," to which the plaintiff became entitled under the will. They are now, as they always have been, a portion of the original capital stock of the company. They are not newly created shares. And they do not represent income. They were not created to represent income; nor were they purchased with income. They were not transferred to the stockholders as a substitute for any of the regular annual dividends of the company. These annual dividends have been paid since, as before, the distribution of these shares; and, so far as appears, they have been for the same amount. And the plaintiff has received, not only her regular dividends on the original fifty shares held by Mr. Rich at the time of his death, but she has also received the dividends on the five shares received by the trustees since his death. And there is no reason to doubt that she will continue to receive them in the future. We think she can rightfully claim no more.

If these shares had been purchased with the accumulated earnings of the road; earnings which, but for such purchase, would, or might have been distributed to the stock-holders as dividends, a very different case would be presented. Possibly, they might then be regarded as representing income, and be treated as income. *Leland ·v. Hayden*, 102 Mass. 542.

But these shares were not so purchased. They were purchased with the bonds of the company,—interest-bearing bonds,—thereby creating a debt of nearly four millions of dollars. The exact amount is three million eight hundred and fifty-eight thousand dollars. The tendency of such a debt is to reduce the amount of the dividends and impair the market value of the stock. The plaintiff may need the dividends on the additional five shares to keep her income up to what it was before this interest-bearing debt was contracted. And we think it is right that she should have them. And if she needs the dividends to keep her income up, it is equally certain that the owner of the stock will need the five additional shares to keep up the aggregate value of his

interest in the stock. For if the dividends are diminished, the market value of the stock is sure to follow.

It seems to us, therefore, that the equitable and proper division of these five shares between the owner of the life-interest in the original stock and the owner of the remainder, is to give the former the dividends and the latter the stock. If the income of the road is sufficient to pay the interest on this newly contracted debt, and keep up the amount of its former dividends, then both parties will be benefited. Her income will be increased, and so will be the aggregate value of his stock. And then the division seems to us to be equitable and just.

Authorities bearing upon the questions involved in this class of cases are cited in *Richardson* v. *Richardson*, 75 Maine, 570, and by counsel in their arguments in this case, and need not be repeated here. There is also a very able and learned review of the cases, both English and American, in the American Law Review for 1885, (Vol. 19, p. 737). And the correction of a supposed error with respect to one of the English cases, in 20 American Law Review, 746. But we can find no case presenting precisely the same question as the one which is presented in this case. The rule generally adhered to in England, is to treat all regular dividends as income, and all irregular dividends and bonuses as capital. A rule supposed to have been established in *Minot* v. *Paine*, 99 Mass. 101, and known as the Massachusetts rule, is that, stock dividends are to be regarded as principal, and cash dividends as income. But this has proved to be a very elastic rule in the state of its origin ; for in *Leland* v. *Hayden*, 102 Mass. 542, while professing to adhere to it, the court did in fact treat a cash dividend as capital, and a stock dividend as income. The effort in this country has been generally, to maintain the integrity of the capital, and to give all surplus earnings, in whatever form distributed, to the life-tenant.

And, perhaps, no better rule than this can be adopted. It is the one to which we have endeavored to adhere in this case.

*Bill dismissed.*

PETERS, C. J., DANFORTH, LIBBEY, EMERY and HASKELL, JJ., concurred.