JANE E. GAMMON, Exrx. *et al.*

*v.*

SAMUEL H. GAMMON *et al.*

*Filed at Ottawa October 29, 1894.*

1. WILLS—*construction—power to sell lands by implication.* If the duty imposed by a will upon an executor necessitates the sale of real estate, the requisite power to that end is implied.

2. SAME—*a direction to "divide" does not imply power to sell.* A direction to divide real estate between or among devisees, does not, by implication, authorize the executor to sell it.

3. SAME—*express devise excludes power in executor to sell.* An express devise to a person named in the will excludes an implied power in the executor to sell the subject of the devise.

4. SAME—*words "to belong" carry an express devise.* If a will directs that certain property shall "belong" to a devisee named, the words will import an express devise to such person.

5. SAME—*application of the above rules.* A direction in a will that a residue of property shall be "divided into two equal parts, one part to belong to the trustees of the Gammon School of Theology, * * * the principal to be invested and the income only to be used," etc., confers no power upon the executors of the will to sell the real estate included in such devise and invest the proceeds, that power being given by the will to the trustees of the school, only.

6. EXECUTORS—*have, at common law, no power over real estate.* Executors, as such, have, by the common law, no estate in or power over the real estate of the testator.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. JAMES FRAKE, for the appellants:

Where there is a general direction to sell, but it is not stated by whom the sale is to be made, then, if the proceeds of the sale are to be applied by the executors in the execution of their office, a power to sell will be implied. *Tilden* v. *Hyde,* 2 Sim. & Stu. 238; *Going* v. *Emry,* 16 Pick. 112; *Winston* v. *Jones,* 6 Ala. 550.

Any words with an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will nec-

essarily create a power of sale in the trustee. Perry on Trusts, sec. 766.

Mr. B. W. Ellis, for the appellees :

Executors, as such, have no estate in or power over the real estate of their testator. *Hall* v. *Irwin,* 7 Ill. 181; 3 Redfield on Wills, 134; Gerard on Titles to Real Estate, 443; *Barker* v. *Crosby,* 32 Barb. 184.

Where the trust commences, there the office of executor ends. As trustees they exercise a common law power. They act under the provision of the will as a common law authority. *Hall* v. *Irwin,* 7 Ill. 181.

This power exists only to the extent that it is expressly or impliedly given by the will. *Hale* v. *Hale,* 125 Ill. 404.

If the appellants are directed to sell these lands, as claimed by them, then the effect is an equitable conversion of this real estate into personalty *eo instanti* upon the death of the testator, and no interest therein descended to or was vested, under the will, in the appellees. *Baker* v. *Copenbarger,* 15 Ill. 103 ; *Jennings* v. *Smith,* 29 id. 116.

A mere direction to divide is not enough,—there must be some further active duty to perform. 2 Perry on Trusts, sec. 766.

A devise to divide and pay over shares to legatees, where a division is impossible, implies a power of sale; but a mere direction to divide is not enough. *Wood* v. *White,* 4 M. & C. 481; *Whitman* v. *Fisher,* 74 Ill. 149.

Mr. Justice Baker delivered the opinion of the court:

Elijah H. Gammon died testate on the third day of July, 1891. The first clause of his will was as follows : "It is my will that my debts shall be paid out of any money or other assets which I may leave, and that all the residue of my property, both personal and real, shall be divided by my executors, as follows, namely." The will then made

provision for Jane C. Gammon, wife of the deceased, by giving her one-third of all personal property and all her dower rights in any and all real estate, and also the use of the homestead and furniture during her natural life. It then disposed of certain specified houses and lots and real estate in Chicago, Evanston and Rogers Park, and 755 shares of the capital stock of the Plana Manufacturing Company, and $80,000 in money, to designated persons, and it then concluded as follows:

"It is my will that after paying the foregoing legacies, that the residue of my property, both personal and real, shall be disposed of as follows, namely: It shall be divided into two equal parts; one part shall belong to the trustees of the Gammon School of Theology, located near the city of Atlanta, in the State of Georgia, in trust, the principal to be invested and the income only to be used for the benefit and use of said school of theology; and the other part shall be subdivided into five equal parts, one part to belong to Ansel E. Gammon, one part to belong to Samuel H. Gammon, one part to Chas. D. Gammon, one part to Eliza Hennick, and one part to my wife's sister, Mrs. Lucy P. Foote. It is also my will that my wife, Jane C. Gammon, and my brother, Samuel H. Gammon, and George W. Chamberlin and James P. Prindle, be and are hereby declared my executors to carry this will into effect, and that no bond or bonds be required of said executors."

This bill in equity for the construction of the will was filed in the Cook circuit court by the executors named in said will. It is stated in the bill that after the payment of all debts and specific legacies a very large portion of the personal property of the deceased will pass under the residuary clauses, and also that certain specified real estate in Cook county, and other real estate located in different counties of this State and in other States, a greater part of which produces no income, will also pass under said residuary clauses, and it is also stated therein that large special assessments have been confirmed

against some of the real estate in Cook county.   The bill
alleges that the name of the corporation known as "The
Trustees of the Gammon School of Theology," which is
named as the beneficiary of one-half of the residuary
estate, has been legally changed to "The Gammon Theo-
logical Seminary," and it makes that corporation and the
other residuary devisees parties defendant.   The bill prays
that the executors may be decreed to have full power and
authority to sell and convey all the real estate owned by
the deceased at the time of his death and not specifically
devised in the will, and to have full right and power to
pay the special assessments.

One of the residuary devisees made default.   The others
of them, including the Gammon Theological Seminary,
interposed demurrers to the bill.   The demurrers were
sustained, and thereupon the executors elected to stand
by their bill, and it was dismissed out of court.

One question, and one question only, is submitted for
our decision.   The matter to be considered is, whether or
not the will gives to the executors power to sell the real
estate not specifically devised, and which passes under
the residuary clauses of the will.   It is conceded by appel-
lants that no express power to sell is given.   Was it, then,
the intention of the devisor that the executors should sell
and dispose of the real estate, blend the proceeds with
the personalty, and then divide and distribute the total
fund among the residuary devisees and legatees, in the
proportions fixed by the will?   In other words, is the
power to sell donated by implication?   It seems to us it
is quite manifest that it is not.   The rule that obtains in
respect to the matter at issue is this : if a duty is imposed,
the performance of which necessitates a sale, then, by
implication, the necessity creates the power to sell.   Here,
the whole of the residuary estate, both personal and real,
is to be "divided" into two equal parts, and one of these
parts is to be "subdivided" into five equal parts.   We will
assume, for the purposes of this appeal only, that the con-

templated division and subdivision of the real property, as well as that of the personal property, are to be made by the executors. The real estate, then, is to be "divided," and a moiety of it is then to be "subdivided." The rule applicable to such state of the case is, that a mere direction to divide does not imply a power of sale. 2 Perry on Trusts, sec. 766; *Cornick* v. *Pearce*, 7 Hare, 477 (27 Eng. Ch. 477); *Clark* v. *Riddle*, 11 Serg. & R. 311.

*Hale et at.* v. *Hale et al.* 125 Ill. 399, was a much stronger case in favor of the power to sell than this. There the will directed that the residuary estate, both real and personal, should be and remain in the care and custody of the executors and trustees, "well and safely invested," until the decease of the last survivor of the life annuitants, when the residue should be "divided." It was held that the trustees and executors had no power, by implication, to sell the lands in Illinois, and it was also held that, to sustain the doctrine of equitable conversion by executors, the provisions of the will must be so clearly written as to leave no doubt of the intention of the testator to have his real estate converted into personalty. And there was a like ruling in regard to the same will by the Court of Appeals of the State of New York, in respect to the lands of the testator located in that State. *Hobson et al.* v. *Hale et al.* 95 N. Y. 588.

It is to be noted, that by the residuary clauses of the will at bar it is the residue itself that is to be divided,— not the proceeds of the residue. The language of the testator is: "The residue of my property, both personal and real, * * * it shall be divided into two equal parts; one part shall belong to the trustees of the Gammon School of Theology, * * * and the other part shall be subdivided into five equal parts." It is well settled by the decisions of the courts, that where there is an express devise to a person or persons named in the will, there can be no power of sale in the executors by implication. In *Patton* v. *Randall*, 1 Jac. & Walk. 189, the Master

of the Rolls said: "Before an implication is raised there must be an absence of express devise, and in opposition to a devise it can never be raised." So in the case now before us the testator says: "One part shall belong to the trustees of the Gammon School of Theology, and the other part shall be subdivided into five equal parts, one part to belong to Ansel E. Gammon, one part to belong to Samuel H. Gammon, one part to Chas. D. Gammon, one part to Eliza Hennick, and one part to my wife's sister, Mrs. Lucy P. Foote." These are manifestly express devises to the corporation named and to each of the five persons designated. What was it of which one of two equal parts was to "belong" to the corporation? The context clearly shows that it was a moiety of the residue of the property of the testator, both personal and real; and by parity of reasoning, one-fifth of the other moiety of said residue is to belong to each of the other five residuary devisees.

Our attention is called to the provision in the will that the "principal" of the undivided moiety is to be "invested," and the income, only, used for the benefit and use of the school of theology. The suggestion is made that by the word "principal" the devisor can not mean anything else than money,—the proceeds of the personalty and realty; that one would not speak of real estate to be invested, but of the proceeds of real estate to be invested. It is a sufficient answer to this suggestion to say, that the word "principal" is here used to designate the original gift, as distinguished from its income. There is, perhaps, a better answer, but it can not be so briefly stated. The word "invested," found in immediate connection with the word "principal," has no reference whatever to any duty that is to be performed by the executors. It would be absurd to suppose that the testator contemplated that the executors of his will, whom he nowhere even designates as trustees, should be a sort of *quasi* corporation, with right of perpetual existence, organized under the

auspices of a probate court in northern Illinois for the purpose of investing and keeping invested a fund, and applying the income derived therefrom for the benefit and use of a theological seminary located near the city of Atlanta, in the State of Georgia, which had a local board of trustees of its own. The language of the will neither requires nor will bear any such construction. The will says : "One part shall belong to the trustees of the Gammon School of Theology, located near the city of Atlanta, in the State of Georgia, in trust, the principal to be invested and the income only to be used for the benefit and use of said school of theology." The primary meaning of the word "belong," as given by lexicographers, is, "to be the property of." Such, also, is the common and ordinary meaning of the word, and such, from the context, is plainly the meaning that the testator attached to it. A moiety, then, of the residuary real estate is the property of the trustees of the school or seminary, in trust for the use and benefit pointed out in the will; and this being so, no reason is perceived why such trustees cannot, if it is necessary or proper for the purpose of accomplishing the purposes of the trust, sell and dispose of such real estate, and collect the purchase money, and when this is done, invest such proceeds,—*i. e.*, the "principal,"—by placing it so that it will be safe and yield a profit. The direction, "the principal to be invested and the income only to be used for the benefit and use of said school of theology," is intended to control and govern the conduct and acts of the trustees of the school,—not the conduct and acts of the executors of the will.

Attention is called to the fact that the testator, in the last clause of his will, states that it is his will that the four persons there named by him "be and are hereby declared my executors to carry this will into effect." The rule of the common law is, that executors, as executors, have no estate in or power over the real estate of their testator. (*Hall* v. *Irwin*, 2 Gilm. 176.) Therefore, if these

executors have any power, right or interest in respect to the real estate that is within the scope of the residuary clauses of this will, it must be by virtue of either some statute or of the provisions of the will itself. No statute is pointed out or relied on. We are inclined to concur in the suggestion made by counsel for appellees, that the words "to carry this will into effect," quoted above from the last clause of the will, are at most but surplusage, since they merely direct the executors to do the very thing for which they were appointed, and which the law, without the direction, requires them to do.

Appellants, in their brief and argument, call attention to the first provision of the will, which reads as follows : "It is my will that my debts shall be paid out of any money or other assets which I may leave." And in that connection they ask this question : "If the executors should distribute the entire personal property, and there should be a large amount of claims allowed against the estate, would there be any doubt that the executors would have the implied power to sell any or all of the real estate, if needed, not specifically devised, to pay the claims?" This question has no relevancy to the bill of appellants contained in this record. It is therein averred as follows : "Your oratrix and orators further represent unto your honors, that after the payment of all debts that have been presented or that can be proved against the estate of the said Elijah H. Gammon, the personal property belonging to said estate is very much more than the specific lega-cies named in said last will and testament, and that a large portion of the personal property of said Elijah H. Gammon, as well as the real estate herein described and other real estate, will pass under the said residuary clauses." And so the inquiry whether the real estate that is within the residuary clauses of the will also falls within the category of "other assets which I may leave," men-tioned in the first provision of the will, and, if so, whether or not it is under a power of sale in the event it becomes

necessary to sell it, or a portion of it, in order to pay debts, does not here arise. Suffice it to say, that the personalty belonging to the estate, other than that covered by the specific legacies, is primarily liable for the payment of debts, and that it is not probable, even if the power contended for exists, that a court of chancery would permit the executors, in palpable violation of their duty under the law, to exercise such power to the detriment of the residuary devisees who take the real estate under the residuary clauses of the will.

We do not deem it necessary to review the numerous cases cited by appellants. We have no fault to find with the rules of law stated in them, or with the applications that the courts made of such rules to the cases that were under consideration by such courts. In our opinion, however, said authorities are not in point in respect to the will and the case now in hand.

The decree and order of the circuit-court are affirmed.

*Decree affirmed.*