IN RE ESTATE OF JOHN L. ETZEL.

No. 40543.

JANUARY 13, 1931.

*Ira W. Jones,* for appellants.

*Edwards, Longley, Ransier & Harris,* for appellees.

FAVILLE, C. J.—The appellee is the surviving widow of the testator, John L. Etzel, who died at Clear Lake, Iowa, on the 29th day of June, 1919. The will in controversy was executed  on the 22d day of August, 1914. Etzel was engaged in various enterprises, and was the owner of a large amount of property. Among the assets of his estate was stock in two corporations, one the Cerro Gordo State Bank, and the other the Clear Lake Electric Light & Power Company. By the terms of said will the testator, among other things, provided:

Paragraph 2. "I give and bequeath to my brother George A. Etzel, or his heirs, one thousand dollars, par value of the capital stock of the Cerro Gordo State Bank, also one thousand dollars par value of the capital stock of the. Clear Lake Electric Light and Power Company."

Paragraph 6 of the will is as follows:

"I give, devise and bequeath to my beloved wife Mary C. Etzel if she shall survive me, my residence property in Clear Lake, Iowa, with all its contents, and all vehicles I may possess. Also the sum of ten thousand dollars in value in such of my property as she may select. Also the use and income of all the rest, residue and remainder of my estate during her lifetime. Also the right and privilege to dispose of by her will and testament one half of all the rest, residue and remainder of my estate according to her desires, which shall remain undisposed of at the time of her death."

Paragraph 7 of the will provides as follows:

"The remaining one half of the rest, residue and remainder of my estate, and of any other property remaining undisposed of at the time of the death of my said wife Mary, I give, devise and bequeath" to certain named remaindermen in specified shares.

I. At the time of his death, the testator was the owner of 59 shares of stock in the Cerro Gordo State Bank. The capital stock of said corporation was $50,000, and there was at said time an accumulated surplus in said bank of approximately

$50,000. The second paragraph of the will bequeathed to the brother of the testator, one George A. Etzel, or his heirs, "one thousand dollars par value of the capital stock of the Cerro Gordo State Bank." On the 10th day of March, 1920, the appellee, as executrix of the estate of said testator, duly assigned and transferred to the said George. A. Etzel 10 shares of the stock in the said bank owned by the said testator at the time of his death, the par value of said shares being $100 each. Thereafter, to wit, on or about the 22d day of April, 1920, said bank declared a 100 per cent stock dividend. The effect of this was to increase the capital stock of the said bank from $50,000 to $100,000, without the payment of any additional amount to the capital, and shares of stock representing said increase of capital stock were issued to the stockholders. The bank also declared a cash dividend of 10 per cent on the original $50,000 capital stock. Said stock dividend was declared by the bank on the 22d day of April, 1920, and the new shares of stock representing said stock dividend were issued on May 20, 1920. At said time, 10 additional shares of stock in said bank were issued and delivered to the said George A. Etzel. Afterward, under an agreement between said George A. Etzel and the attorney for the estate, said 10 shares of stock were turned back into the estate, to be held awaiting the determination of the litigation in respect thereto.

The all-important consideration in determining the question before us is to ascertain, if possible, the intent of the testator. When that is clearly and definitely ascertained, it must govern, unless there is some legal impediment in the way. The bequest of the shares of stock to the legatee George was very brief and concise. It is as follows:

"I give and bequeath to my brother George A. Etzel, or his heirs, one thousand dollars, par value of the capital stock of the Cerro Gordo State Bank."

As to personal property, the will speaks from the date of the death of the testator. It was the obvious purpose and intention of the testator to bequeath to his brother George shares of the capital stock of said bank to the amount and extent of $1,000 *par value*. The testator was fully aware of the condition of the said bank stock, and must have known, even at the time

of the execution of the will, that the bank carried a surplus which might be distributed in the way of cash dividends or stock dividends. It is true, he did not make a special bequest of any specific shares of stock, but he did bequeath $1,000 of the stock of said bank at par value. We think it is obvious that it was the intention of the testator that, after his death, shares of the stock of the bank should pass to his brother George to the amount of $1,000 par value. Suppose that, at the time of the death of the testator, the shares of stock in said bank had been in fact worth but 50 per cent of par value. Under said circumstances, we think it was the clear intention of the testator that the legatee should take only $1,000 of stock *at par value,* which would be 10 shares of stock, even though the actual or book value of said stock was only half the par value. "One thousand dollars par value of the capital stock of the bank" means just what it says. If the shares of stock of the par value of $1,000 were in fact worth less than par, the legacy would be satisfied by the assignment to the legatee of the shares at the par value of $1,000, and the legatee would have to suffer the loss of the depreciation in the actual value of the stock below par. On the other hand, we think it must be equally true that, if the stock was to be transferred at par value, the legatee became the owner of the number of shares of stock required to represent a par value of $1,000. If the stock at said time was worth more than $1,000 par value, the legatee still owned it, and was entitled to receive it as his own at the par value of $1,000, and necessarily would be entitled to all the accumulations that belonged to said shares.

It was the intent of the testator, as expressed in the will, that the legatee George should receive out of the shares of stock owned by the testator such number of shares as would represent $1,000 *"at par value;"* and the title and ownership of said shares of stock, when so separated from the estate, vested absolutely in the legatee, no matter what their actual or book value may have been. It appears that the stock dividend which was later declared on said shares of stock after the said shares had been duly separated from the said estate, assigned, and set over to the said legatee, was in fact earned before the death of the testator, and hence in a strict sense was not a dividend or "income" that accrued to the estate after testator's death.

We are constrained to hold that, under the terms of the will in question, the legatee George became the absolute owner of the shares of stock of the par value of $1,000 that were assigned to him, and that the stock dividend subsequently declared on previously earned surplus was not "income" of testator's estate passing to the widow, but belonged to the then owner of said shares, who was the legatee George.

II. What we have heretofore said in respect to the stock dividend declared on the shares of stock bequeathed to the legatee George must apply equally to the cash dividend of $100 that is claimed by George on the said 10 shares of stock that were duly assigned to him, and which was declared after such assignment and transfer. In connection with the shares of stock in said bank, it must at all times be borne in mind that the intent of the testator, clearly manifested by the will, was that the legatee George would receive $1,000 of said stock at *par value*. Therefore it was the clear intention of the testator that said shares of stock of the par value of $1,000 should be set off to and become the absolute property of the legatee George. The title to the shares of stock represented by $1,000 at par value passed to the legatee when they were duly assigned to him by the executrix, and he took them as of the date of the death of the testator, in their then condition, and is entitled, as owner thereof, from that date to any increase in value above par, or dividends accumulating thereon, and he must likewise suffer any loss or depreciation therein below the par value.

III. Item 2 of the will also provides that the testator gives and bequeaths to his brother George, "also $1,000 par value of the capital stock of the Clear Lake Electric Light & Power Company." The capital stock of the Clear Lake  Electric Light & Power Company was $20,000, divided into shares of the par value of $100 each. The testator was president of said company, and owned 102½ shares of its capital stock. This was evidenced by three certificates of stock held by him, with various numbers of shares enumerated therein. Said Light & Power Company held a franchise from the city of Clear Lake, and a 99-year lease upon a certain tract of ground. It appears that annual dividends were paid on said stock, beginning with the year 1919, up to and including the year 1928, varying

from 20 per cent in 1919 to 50 per cent in 1926, 1927, and 1928. 10 shares of stock were assigned and transferred to the said George A. Etzel on the 10th day of March, 1920. A dividend of $250 appears to have been subsequently declared on the said 10 shares of stock. The said 10 shares were assigned to George without reservation on said date, and from and after said time, they were his absolute property.

As we have already pointed out in previous divisions of this opinion, these shares of stock, like those of the bank, were bequeathed to the legatee George A. Etzel at the *par value* of $1,000, and 10 shares of said stock at a par value of $100 each were assigned to him and became his absolute property without reservation or limitation on March 10, 1920. Therefore, any dividends declared on said shares of stock thereafter belonged to the said legatee. This was the evident intent of the testator.

IV. After the death of the testator, the Electric Light & Power Company continued its operations and paid dividends as stated in a previous division of this opinion. In November of 1928 a proposition was made for the purchase of the entire property of the said Electric Light & Power Company for the sum of $250,000. The executrix and trustee applied to the court for authority to sell the 92½ shares of the capital stock then owned by the estate of said decedent, and an order was entered authorizing such sale. On December 21, 1928, all of the shareholders of the said Electric Light & Power Company voted to dissolve said corporation and make a distribution of its assets *pro rata* to its shareholders according to the number of shares held by each. A provision was made by which the corporation conveyed its assets to the stockholders, and the latter in turn conveyed the entire assets received by them from the corporation to George A. Etzel, as their agent and trustee, to be held by him for final sale and disposition, and subsequently, the said George A. Etzel, as such agent and trustee, entered into a contract for the sale of said assets for the sum of $250,000. This contract was subsequently carried out. The proportionate share of the proceeds of said sale belonging to said estate, which, as stated, then held 92½ shares of the capital stock of the corporation, was invested in certain interest-bearing securities, which are now held by a depositary, under agreement of parties.

The question at this point is whether the proceeds of the

sale of the property, which were distributed to the estate of the testator as a liquidating dividend on the dissolution of the Light & Power Company and the sale of the property, shall be placed in the corpus of the estate, and the income therefrom be paid to the widow of the testator during her lifetime, or shall the amount of said liquidating dividend be delivered to the said widow as her individual property, as income of said estate? We have here a situation where the estate of the testator is the owner of 92½ shares of stock in the corporation, of the par value of $100 each. By the process described, the corporation was dissolved, and the entire property and assets of the corporation were disposed of for cash. The learned trial court was of the opinion that the amount which represents the original capital should be treated as a part of the corpus of the estate, and that the remaining portion of the liquidating dividend is the absolute property of the widow as "income."

There can be no doubt that the amount which represents the original capital should be treated as part of the corpus of the estate. The more difficult question is whether the remaining portion of the liquidating dividend is part of the corpus of the estate or is "income," within the terms of the will of the testator. The precise question does not appear to have been before this court. We have, however, had occasion to consider cases that have a bearing on the question involved. In *Kalbach v. Clark,* 133 Iowa 215, we said:

"Does a stock dividend pass to a legatee of a life estate in the original shares of stock, or are they part of the estate which passes directly to the remainderman? This question has been variously answered by the different courts of the country, and we have never before had occasion to consider it. Three rules seem to have been established by the decisions of the other courts,—one known as the American, or Pennsylvania, rule, another the Massachusetts, or the rule in Minot's case, and the third the English rule. Under the so-called 'American rule,' the courts inquire as to when the stock dividends were earned. If before the life estate arose, it is treated as belonging to the corpus of the estate, and does not go to the life tenant; but, if the fund out of which it was paid was earned or accrued after the life tenancy arose, then the stock dividend goes to the life tenant. *Earp's Appeal,* 28 Pa. 368; *Biddle's Appeal,* 99 Pa.

278; *Philadelphia Co.'s Appeal* (Pa.), 16 Atl. 734; *Spooner v. Phillips,* 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461); *Hite v. Hite,* 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189); *Gilkey v. Paine,* 80 Me. 319 (14 Atl. 205); *Lord v. Brooks,* 52 N. H. 72; *Van Doren v. Olden,* 19 N. J. Eq. 176 (97 Am. Dec. 650); *Riggs v. Cragg,* 89 N. Y. 479; *Hyatt v. Allen,* 56 N. Y. 553 (15 Am. Rep. 449); *Cobb v. Fant,* 36 S. C. 1 (14 S. E. 959). See. 26 American Law Review (Feb., 1892) 1, and *Moss' Appeal,* 83 Pa. St. 264 (24 Am. Rep. [164] 169). Under the Massachusetts rule, stock dividends, no matter when earned or however declared, are treated as capital, and go to the remainderman. Cash dividends, however, go to the life tenant. *Minot v. Paine,* 99 Mass. 101 (96 Am. Dec. 705); *Daland v. Williams,* 101 Mass. 571; *Gibbons v. Mahon,* 136 U. S. 549 (10 Sup. Ct. 1057, 34 L. Ed. 525). There have been some modifications of this rule, however, in Massachusetts. See *Heard v. Eldredge,* 109 Mass. 258 (12 Am. Rep. 687); *Leland v. Hayden,* 102 Mass. 542; *Davis v. Jackson,* 152 Mass. 58 (25 N. E. 21, 23 Am. St. Rep. 801); *Millen v. Guerrard,* 67 Ga. 284 (44 Am. Rep. 720); *Parker v. Mason,* 8 R. I. 427; *Greene v. Smith,* 17 R. I. 28 (19 Atl. 1081). See, also, 5 American Law Review, 720; Perry on Trusts (3d Ed.), Sections 544, 545. Under the English rule, ordinary cash or stock dividends go to the life tenant, while extraordinary dividends are treated as belonging to the corpus, and go to the remainderman. *Witt v. Steere,* 13 Vesey 363; *Bates v. MacKinley,* 31 Beav. 280; *In re Barton Trust* (L. R.), 5 Eq. 238. The rule has not, however, been adhered to in all cases in England. See *Sugden v. Alsbury,* 63 L. T. R. 576; *Ellis v. Barfield,* 64 L. T. R. 625; *In re Bouch* (L. R.), 29 Chan. Div. 635. With such divergence of opinion, it is manifest that cogent reasons may be given in support of either of these propositions. We shall not attempt to review the cases cited in support of the different rules. He who cares to know the logic thereof may read. Our duty is performed when we establish a rule for this state which we believe best sustained on principle and by authority. That rule more nearly approximates what is called the American than any other. Under it we start with the notion that all pure dividends, whether in cash or stock or other property, are a part of the income, and, when declared, should go to the life tenant, and not to the remainderman, as it is not a

part of the corpus of the property, but a part of the income derived from the use and management thereof. Any dividends, so-called, presumptively belong to the life tenant, as they are, in the absence of a showing to the contrary, assumed to have been divided as profits. If, however, the so-called stock dividends represent the corporate capital,—that is, represent nothing but the natural growth or increase in the value of the permanent property, so that there is merely a change in the form of ownership,—such stock should go to the remainderman; for in such cases, the dividend is a dividend of capital, representing simply an increase in the value of the physical property, good will, or other thing of tangible value. This is the modified American rule announced in *Spooner v. Phillips*, 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461) ; *Hite's Devisees v. Hite's Ex'r.*, 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189) ; *Williams v. Tel. Co.*, 93 N. Y. 162; *Lord v. Brooks*, 52 N. H. 72; *Moss' Appeal*, 83 Pa. 264 (24 Am. Rep. 164) ; Thompson on Corp., Sections 2192, 2193. Under this rule it becomes a question of fact as to the actual nature of the dividend. The mere fact that the directors of the corporation call it either one thing or the other is not controlling. The Massachusetts rule has also been adopted by the Supreme Court of the United States, but has been most severely criticized, and the court which first announced it has departed somewhat from the hard and fast principle just announced. Originally the courts of that state held that the form of action taken by the corporation was conclusive : that is to say, if the stock was issued as a capital dividend, this was an end of the inquiry. But this loses sight of the real inquiry as to what is income which should go to the life tenant. As we have said, however, the Massachusetts court has receded somewhat from that position. *Heard v. Eldredge*, 109 Mass. 258 (12 Am. Rep. 687) ; *Davis v. Jackson*, 152 Mass. 58 (25 N. E. 21, 23 Am. St. Rep. 801). The Georgia decision heretofore cited seems to be based upon a statute of that state. See Code Ga. 1873, Section 2256; *Millen v. Guerrard*, supra."

Continuing the quotation, we said:

"Under the rules we have announced, we start out with the assumption that these stock dividends represent income, and cast the burden upon him who claims they were of capital, and

simply represent the property of the corporation, of showing that fact. Going back, now, to the record, we find that in 1903 the capital of the company was increased from $400,000 to $600,000, and that the increase was distributed to the stockholders. This increase represented the enhanced value of the company's property, due to gradual enhancement of its value. Cash dividends from earnings were declared from time to time, but the stock dividends of 1903 represented, not the net earnings of the company or its surplus, but the increased value of the property and the plant. As we have already observed, this is simply a dividend of capital: in other words, an increase in the number of shares of stock, but not an increase in the aggregate of the value of the shares. As the stock dividend in the instant case did not represent earnings or income, but merely a change in form of the ownership of the corporate capital, the shares should go to the remainderman, and not to the life tenant. Much more might be said in support of this rule, but enough has been stated to indicate that the view taken is the equitable, just, and reasonable one, and we forbear further discussion.''

In *Lauman v. Foster*, 157 Iowa 275, we said:

''Any enhancement in the value of stock by reason of withholding the earnings inures entirely to the benefit of the *corpus*, and the life tenant derives no advantage therefrom. * * * 'Income,' as used in a will bequeathing stock, means the same thing as 'dividend.' *Reed v. Head*, 6 Allen (88 Mass.) 177. In *Spooner v. Phillips*, 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461), it was said: 'The use of the stock seems to be limited to the receipt of dividends and income. The word ''dividends,'' if unqualified, signifies dividends payable in money. The word ''income'' has a broader meaning, but hardly broad enough to include things not separated in some way from the principal. It is not synonymous with ''increase.'' The value of the stock may be increased by good management, prospects of business, and the like. But such increase is not income. It may also be increased by an accumulation of surplus; but, so long as that surplus is retained by the corporation, either as surplus or increased stock, it can in no proper sense be called ''income.'' It

may become producing, but it is not income.' *Smith v. Hooper,* 95 Md. 16 (51 Atl. 844).''

We also said: -

''But where a corporation increases its capital stock without declaring a dividend, and gives the stockholders the option to subscribe for the new stock in proportion to that held by them, this is regarded by many authorities as incident to the ownership of the stock, and does not belong, as a privilege, to the life tenant. Such increment is treated as capital, to be added to the trust fund for the benefit of the remaindermen; and this is so whether the trustee of the estate subscribes for the new stock for the benefit of the trust, or sells the right or option to subscribe for a valuable consideration. Of course, the dividends from the additional stock or increase from the proceeds of the sale of the right or option would be a part of the income to be paid to the life tenant.''

The appellee places great reliance upon our holding in *In re Sherman Trust,* 190 Iowa 1385. In that case the testator directed his executors to place a sum of money in the hands of trustees, to be held by them in trust, and the income of the same to be paid annually to his son, and provided that, at the death of the son, the trustees should pay ''the principal sum'' to certain designated beneficiaries. The trustee invested a portion of the trust fund in the stock of a bank. The value of the bank stock increased during the life of the life tenant. This was due to the fact that the bank declared but comparatively small dividends, and allowed its earnings to accumulate. The question involved on the appeal was whether the estate of the life tenant was entitled to the accumulations in value on said bank stock above the ''principal sum'' of the trust estate, or whether the same were part of the corpus of the estate, and passed to the remaindermen. We made an extensive review of the authorities bearing upon the question involved. We said:

''As between remaindermen and life tenants, the question is not what corporation management may do about declaring dividends, so far as stockholders are concerned. What these managements may do is corporation law. What the rights of the remaindermen and life tenants are in corporation shares is

a question of what it may reasonably be found was the intent of the creator of the trust.''

Again, we said:

''* * * whether a distribution made by a corporation during the continuance of the life estate is to be regarded as income or as capital is primarily one of construction—a question of intention of the creator of the trust, manifested by the will or other instrument by which the right to the income is, for the time being, severed from the corpus.''

We summed the matter up in the following statement:

''So the sole question we have is: What was it that the creator of the trust before us intended should be received by the remaindermen and the life beneficiary, respectively,—what intention as to this is to be gathered from the will? * * * The direction to the executors is to pay income annually to the son during life, and that, at death of the son, 'said trustees or their successors are to pay the *principal sum* to the trustees of Iowa College, and to the American Home Missionary Society, to each one half, for the general uses of said institutions.' * * * 'Principal sum' means the 'main' sum, being the amount left in trust, —the amount originally paid for and invested in the stock. 31 Cyc. 1173. Principal sum means also the 'original gift,' being, once more, the amount invested in the bank stock, and not its present value. 31 Cyc. 1174; *Gammon v. Gammon*, 153 Ill. 41 (38 N. E. 890). * * * If the intent of the testator is clear, the adjustment should be made as though the distribution were made at the dissolution of the corporation: that is to say, if the principal sum only is to be paid over, the trustee must take such steps as will separate the amount of that principal sum from what is on hand or may be realized for the stock. In analogy to the holding of *St. John v. Erie R. Co.*, 22 Wall. (U. S.) 136, the obtaining the principal sum for payment over involves a separating of all of the principal sum from the accretions upon that sum. Whatever in the value of the stock is earnings above the amount of the principal sum, therefore, belongs to the life tenant. * * * It follows, then, that, no matter how inconvenient it may be to do it, the intention of the creator of the trust should be effectuated (*In re Heaton's Estate*, 89 Vt. 550 [96 Atl. 21]) ;

and segregation or other steps required to pay on the principal sum, and the other the accretions, must be made or taken; and to this requirement all the different rules must yield, where, as here, the intent is clear that they shall yield.''

In the *Sherman* case we affirmed the rule that the intent of the settlor of the trust was to govern, regardless of the methods of operation of the corporation in declaring dividends. We held in the *Sherman* case that, under the terms and provisions of the will creating the trust, it was expressly provided that the amount that should be turned over to the remaindermen was ''the principal sum'' of the trust estate only. We held that all accumulations over and above said ''principal sum'' were intended by the settlor of the trust to pass to the life tenant. As in the *Sherman* case, so in the case at bar, the all-important and vital matter to be first determined is the intent of the testator. The terms of the will in the *Sherman* case are very different from those of the will in the case at bar, as evidencing the intent of the testator. It was provided in the *Sherman* case that it was *''the principal sum''* of the trust estate that was to pass to the remaindermen. Therefore, all over and above the said ''principal sum,'' whether in the form of dividends on corporate stock or not, came within the comprehensive term of ''income,'' and passed to the life tenant. This was true because such was the intent of the testator, under his will. In the case at bar, however, the bequest to the life tenant is ''the use and income of all the rest, residue, and remainder of my estate during her lifetime.'' That the testator intended the corpus of the estate to remain intact, and that the ''use and income'' only were to be given to the life tenant, is also evidenced somewhat from the fact that the testator conferred upon the life tenant the privilege of disposing of one half of said rest, residue, and remainder of said estate. This case also involves a *liquidating dividend,* and is not a question of mere undivided earnings, or what might be called a surplus. It has to deal with a liquidating dividend, and this liquidating dividend is, in reality, only a division of the assets of the corporation. It represents the total value of the physical property, franchise, good will, and all other things of value owned by the corporation. It is not contended that this liquidating dividend represents earnings of the corporation while the corporate prop-

erty remained in existence and the corporate life continued. Such dividends had been regularly declared and paid. This dividend is properly designated as a *"liquidating dividend."* The corporation ceased to exist. Its entire assets were sold and disposed of. Proper *pro rata* distribution was made among the shareholders of the corporation of the amount so received. The estate of the testator owned certain shares. The liquidating dividend represented those shares in a new form. We are of the opinion that the entire *pro rata* amount apportioned to the shares owned by said estate became a part of the corpus of said estate, and would pass to the remaindermen, and was not income, passing to the life tenant. Of course, the life tenant is entitled to have the entire income from all the proceeds of the sale of the corporate property which were apportioned to the estate, under the terms of the will.

This conclusion is necessary to carry out and effectuate the intent of the testator. It keeps the corpus of the estate intact for the benefit of the remaindermen, and allows the widow the full income therefrom during her lifetime.

The motion of appellee to dismiss or affirm, which was ordered submitted with the case, is overruled.

The decree of the trial court, as herein indicated, is—*Reversed.*

All the justices concur.