## WATERMAN v. ALDEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 455. Submitted January 8, 1892. — Decided February 29, 1892.

A testator, after giving the bulk of his property to his six brothers and sisters in equal shares, directed that "any and all notes, bills, accounts, agreements, or other evidences of indebtedness against any of my said brothers and sisters, held by me at the time of my decease, be cancelled by my said executors and delivered up to the maker or makers thereof, without payment of the same or any part thereof," except two notes specified, and secured by mortgage. *Held*, that this direction did not include joint and several notes made to the testator, between the date of the will and his death, by a partnership of which a brother was a member, to obtain money to carry on the business of the partnership, and secured by a conveyance of valuable property.

THIS was a bill in equity by Robert W. Waterman, a citizen of California, against Philander M. Alden and George S. Robinson, citizens of Illinois, and executors of James S.

Waterman, to recover back certain sums of money alleged to have been paid by mistake.

James S. Waterman, for twenty years before his death, lived and did business as a banker in Sycamore, Illinois. He died on July 19, 1883, without children or descendants, and leaving an estate amply sufficient, without the sums claimed in this suit, to pay all debts, legacies and costs of administration.

By his last will, dated November 28, 1870, and admitted to probate September 18, 1883, he gave to his wife one-third of all his estate, real and personal; to other persons certain specific legacies of comparatively small amount; and all the residue of his estate, real and personal, to trustees in trust to pay the annual income for a term of twenty-one years to his six brothers and sisters, (of whom the plaintiff was one,) and at the end of that time to divide the principal in equal shares among them and the issue of any one deceased; and further provided as follows:

"7th. I desire and direct that any and all notes, bills, accounts, agreements, or other evidences of indebtedness against any of my said brothers and sisters, held by me at the time of my decease, be cancelled by my said executors and delivered up to the maker or makers thereof, without payment of the same or any part thereof, except two notes I hold against John C. Waterman, one for eight thousand dollars, dated August 10, 1870, and due January 1, 1871, and one for four thousand and six hundred dollars, dated November 28, 1870, and due six months after date, and both secured by trust deed upon lands in Johnson County, State of Missouri, which notes I desire and direct to be collected and equally divided between my said brothers and sisters, the child or children of a deceased brother or sister to take the same share the father or mother would have taken if living."

In accordance with the seventh clause of the will, the defendants delivered up to the plaintiff individual notes of his for from $12,000 to $15,000, and to John C. Waterman, another brother, his unsecured notes for about $30,000.

The real question in the case is whether that clause of the

will applies to notes given by the plaintiff and another person to the testator under the following circumstances:

In 1881 the plaintiff, residing in San Bernardino, California, formed a mining partnership with one Porter, under the name of Waterman & Porter, in which the plaintiff's interest was three-fourths and Porter's one-fourth. On May 14, 1881, the plaintiff signed and gave to the testator, as security for the payment of any advances that he might make to the partnership, an agreement in writing to execute to him, within twelve months from date, on demand, a conveyance of twenty-four undivided hundredths of certain mining property in California, the estimated value of which at that time was, as the plaintiff testified, $1,000,000. The testator advanced to the partnership, for the development and working of the mines, between $25,000 and $30,000, part of which was repaid in his lifetime. At his death, he held five notes of the partnership, (which may be assumed to have been several as well as joint,) signed by the partnership name, amounting in all to $10,000, dated in the latter part of 1881, and payable in February or March, 1882, with interest at the rate of eight per cent annually. The partnership afterwards sent to the defendants, in payment of these notes, with interest, and of other debts of the partnership to the testator, drafts of a bank in San Francisco upon a bank in Chicago for $11,949.51, bought by the partnership, Porter contributing his share; and the defendants thereupon cancelled and returned these notes.

The plaintiff demanded of the defendants repayment of these sums, as having been paid in ignorance of the terms of the will, and under mistake of law and of fact. The defendants refused, because they were advised by counsel that by the will the only notes or evidences of indebtedness against the testator's brothers which were to be cancelled and delivered up were simply personal debts.

This bill in equity was thereupon filed, and, after a hearing before the Chief Justice on pleadings and proofs, was dismissed; and the plaintiff appealed to this court.

*Mr. William R. Plum* for appellant.

The seventh clause of the will imports a legacy; it is not a testamentary act in the nature of a release. It is not a renunciation or abandonment of part of the estate, but a gift of part of the estate which the executors were not bound to collect and distribute for the sole reason that the death of the testator found already in the hands of the legatee what testator intended to give him. *Izon* v. *Butler*, 2 Price, 34; *Elliott* v. *Davenport*, 1 P. Wms. 83; *Toplis* v. *Baker*, 2 Cox Ch. 118; *Maitland* v. *Adair*, 3 Ves. Jr. 231.

The rule of construction is, that a bequest in general terms *prima facie* includes everything, capable of being comprehended under those terms, which the testator had power to dispose of. This is the fundamental and tacit assumption of courts in developing rules of construction. *Morrice* v. *Aylmer*, 44 Law Journ. Ch. 212.

The debt in question was the several debt of appellant to the testator. Rev. Stat. Illinois, c. 76, § 3; *Marine Bank* v. *Ferry*, 40 Illinois, 255; *Gage* v. *Mechanics' Nat. Bank*, 79 Illinois, 62; *People* v. *Harrison*, 82 Illinois, 84; *Byers* v. *Vincennes Nat. Bank*, 85 Illinois, 423; *Stearns* v. *Aguire et al.*, 6 California, 176; *People* v. *Love et al.*, 25 California, 520.

That the testator did not mean to confine his bequest to such debts as were secured only by the personal engagement of the debtor brother or sister, is shown by his specific exception of a debt of his brother John, which was secured by trust deed on land in Missouri. The express direction that that debt was to be collected, implies that in the mind of the testator his executors were not in any other case to have an action against any brother or sister.

A gift or legacy imports a bounty or personal benefit to the legatee. In addition to the gift of income made in section 4 the trustees are expressly directed to pay over his share to each legatee. Appellees' construction of the seventh section would necessarily, in certain obvious contingencies, impair the benefit bestowed in the fourth, and contradict the direction to pay over. *Bates* v. *Hillman*, 43 Barb. 645.

*Mr. John P. Wilson* for appellees.

MR. JUSTICE GRAY, after making the foregoing statement, delivered the opinion of the court.

The matter to be ascertained in this case is the intention of the testator as manifested on the face of his will, by which, after making provision for his widow, and some inconsiderable legacies, he devises and bequeaths the bulk of his property to be distributed among his brothers and sisters in equal shares, and then, as incidental to his general scheme of distribution, directs " that any and all notes, bills, accounts, agreements or other evidences of indebtedness against any of my said brothers and sisters held by me at the time of my decease be cancelled by my said executors and delivered up to the maker or makers thereof, without payment of the same or any part thereof," except two notes held by the testator against John C. Waterman alone, amounting to $12,600, secured by trust deed upon lands in Missouri, which he directs to be collected and divided among his brothers and sisters.

The manifest object of the clause is to benefit brothers and sisters of the testator, and them only. The testator clearly expresses his intention that (with the exception specified) any sums of money, which may be owing by any of them to him at the time of his death, shall not be collected, or be treated as part of his estate for the purpose of division among them, but that all notes, bills, accounts, agreements or other evidences of such debts shall be cancelled and delivered up. The terms of the exception may affirm or imply an intention to include in the general provision debts of a brother or of a sister for which he holds security; but they have no tendency to show that sums of money owing from any other person are intended to be released or given to such person, or to be excluded from the estate to be distributed among the brothers and sisters.

Taking the words of the clause, in connection with the general scheme of the will, it is impossible to attribute to the testator an intention to include joint and several notes made to him, between the date of the will and his death, by a partnership of which one brother is a member, to obtain money to carry on the business of the partnership, and secured by an

agreement to convey real estate. To hold that the brother alone was discharged from liability, while his partner remained liable to the estate, upon such notes, would be inconsistent with the positive direction that all notes coming within the scope of the clause shall be cancelled by the executors "and delivered up to the maker or makers thereof, without payment of the same or any part thereof." To hold that there was a legacy of the whole of such notes to the brother, with a right to compel payment of a share thereof by his partner, would be equally inconsistent with that direction, and would moreover give to the brother alone, instead of to him together with the other brothers and sisters, the share of the debt for which the stranger was ultimately liable. To hold that such notes should be cancelled and extinguished as against both makers, the brother and his partner, would contravene the testator's manifest purpose to benefit brothers and sisters only; for to release the stranger from his share of the debt would not only confer no benefit upon the brother, but would injure him in common with the other brothers and sisters by diminishing the estate to be divided among them.

The case is quite different from a legacy to a particular person of "his bond" for a sum named, which must, of course, pass a joint bond, when there is no other, as in the cases, cited by the appellant, of *Maitland* v. *Adair*, 3 Ves. 231, and *Izon* v. *Butler*, 2 Price, 34.

The decisions upon contracts to secure debts of a particular person are, to say the least, not inconsistent with this conclusion. A contract of guaranty or suretyship, by which one person undertakes to be responsible for debts to be contracted by another, does not ordinarily include debts contracted by the latter jointly with a third person, as partners or otherwise. *Bellairs* v. *Ebsworth*, 3 Camp. 52; *London Assurance Co.* v. *Bold*, 6 Q. B. 514; *Montefiore* v. *Lloyd*, 15 C. B. (N. S.) 203; *Leathley* v. *Spyer*, L. R. 5 C. P. 595, 602; *Palmer* v. *Bagg*, 56 N. Y. 523; *Parham Sewing Machine Co.* v. *Delano*, 113 Mass. 194, 197; *White Sewing Machine Co.* v. *Hines*, 61 Mich. 423. Even when a man gives security for debts which he may himself contract, opinions have differed upon the ques-

tion whether it does or does not include debts contracted by him as a member of a partnership. *Ex parte Freen*, 2 Glyn & J. 246; *Chuck* v. *Freen*, Mood. & Malk. 259; *Ex parte Mc-Kenna*, 3 DeG. F. & J. 629; *Buffalo Bank* v. *Thompson*, 121 N. Y. 280; *Hallowell* v. *Blackstone Bank*, 154 Mass. 359.

For these reasons, we concur in the opinion delivered by the Chief Justice in the Circuit Court, that the seventh clause of the will, whether operating by way of release or by way of legacy, cannot be construed as including the joint and several notes of Waterman & Porter, or any part thereof.

*Decree affirmed.*