WILLIAM J. HENDERSON et al.

*v.*

FRANK E. HENDERSON.

[Decided July 22d, 1910.]

1. For some purposes a will speaks from testator's death, and all property falling fairly within it will pass whether acquired before or after its execution.

2. "Relations," as testamentary beneficiaries are relatives, entitled under the statute of distributions, and persons who have married them.

3. A will reciting that there "are" no debts owing by any relative, did not release a debt to testatrix from her son incurred after the will was executed.

---

*Mr. Richard Boardman,* for the complainants.

*Mr. Francis V. Dobbins,* for the defendant.

STEVENS, V. C.

Ettie Henderson died leaving a will by which she disposed of her entire estate, real and personal. After making specific bequests and devises, chiefly to her children and grandchildren, and after nominating Henry V. Condict and her two sons, William and Francis, executors, she provided as follows:

"In the event of the inability of Mr. H. V. Condict to serve as my executor, I appoint Mr. Walter Condict to serve in his place, and be it understood that no debts are owing by any relative."

The will charges that after the making of this will her son Frank, the defendant, became indebted to her in the sum of $3,000.

The will was made on December 13th, 1906. The testatrix died in October, 1909. The question is whether the debt con-

tracted by Francis is released by the effect of the words "no debts are owing by any relative."

The defendant's contention is that a will speaks as of the time immediately preceding testator's death; that, consequently, Mrs. Henderson must be regarded as having, at that time, declared that no debts were owing by any relative, and that the effect of this declaration was to discharge all her relatives, and, consequently, her son, from the payment of all or any debts owing by them that would otherwise have been due her estate.

It is no doubt true that a will is for some purposes regarded as speaking from the death. All property fairly falling within the descriptive words will pass whether acquired before or after the making of the will. It is said, that the rule that it so speaks, applies to the effect and operation of the will; to the ascertainment of the property passing by it, but that it does not apply to its construction. *Gray* v. *Hattersley, 50 N. J. Eq. (5 Dick.) 213.* It has, accordingly, been held that if the gift be to "my beloved wife," the bequest is to the wife living when the will was made, not to the second wife living at testator's decease; that if the bequest be to the parish in which testator is living, it goes to the parish in which testator lived at the time he made his will, and not to the parish into which he has removed and may have been living at the time of his death. *Garret* v. *Niblock, 1 Russ. & M. 629.* The rule as to the ademption of specific bequests is another illustration. *1 Jarm. Wills *280.* In *Smallman* v. *Goolden, 1 Cox 329,* testator gave to his son "all sum and sums of money due to me from him on bond or bonds or any other security," and Sir Lloyd Kenyon held that he must suppose testator meant to measure the bounty according to the situation at the time of making the will and could not have in contemplation any future sums of money which the son might owe him. He therefore held that the subsequent bond was not included in the bequest. It is true that this case was criticised by Chancellor Walworth in *Van Vechten* v. *Van Vechten, 8 Paige 104, 116,* where the language was, however, more comprehensive, but it seems to have been thought an authority under the old law in *Everett* v. *Everett, 7 Ch. Div. 428,* a case coming up under the statute of wills of 1

*Victoria* which compelled a more rigid construction. In this case, a testator, after reciting that his son was now indebted to him in various sums of money in respect of advances and that he was desirous that his son should be released and that the securities should be given up, bequeathed to him all the aforesaid moneys and released him from all claims in respect of said moneys, *"and all other moneys due from him."* On these latter words the court of appeals, having regard to the before-mentioned statute, reversed the vice-chancellor and held that it would not be giving effect to testator's language if it were read as including only debts existing at the date of the will.

In *Douglas* v. *Douglas, Kay 400,* Lord Hatherly, in another case under the same statute, said that a gift of all my stock would pass all stock to which the testator was entitled at his death, but that a gift of all my stock *which I have purchased* would be confined to stock actually purchased at the date of the will. The will there provided:

"I hereby exonerate my sister from all claims in respect of money laid out by me in improvements of the estates in Scotland and which money has according to the laws of Scotland, been charged thereon;"

and the decision was, that the exoneration only applied to moneys so charged at the date of the will and not to moneys afterward laid out and charged, and not even to moneys then laid out but afterwards charged. The statute under which this was decided (*1 Vict. ch. 26 § 24*) enacted that

"every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect immediately before the death of the testator unless a contrary intention shall appear by the will."

It has been regarded as imposing a more rigid rule of construction, in respect of personalty bequeathed, than had theretofore prevailed. *In re Ord, 12 Ch. Div. 22; In re Portal, 27 Ch. Div. 600.* It has not been copied into the legislation of this state; section 24 of the Wills act merely providing that real estate acquired by testator after the making of his will shall pass, &c., unless a contrary intention be manifest on its face.

In view of the above authorities, it may not be altogether free from doubt whether had testatrix said in so many words that she released all debts that "are" owing to her by any relative, such release would have extended to debts incurred after the will was executed. But testatrix has made no bequest of debts. On the contrary, she has said that no debts were owing. How could she be regarded as intending to release or exonerate that whose existence she expressly denied? It cannot be argued that the words are not to be taken literally, for the reason that so taken they would not state the fact;. for there is no allegation of any such debts. Taking the words as we find them, they do no more than state that which in the absence of proof to the contrary I must assume was true at the time she was penning her will, and untrue immediately before her death.

Whom she meant by the term "relative" it is hard to say. Where a gift is made to "relations," courts, from the necessity of the case, give the word an artificial meaning in order to give it any effect at all. They confine it to relatives entitled under the statute of distributions and to persons who have married relatives so entitled. *2 Wms. Ex. \*1003.* Do the words themselves indicate (for there is no other indication) that when testatrix said on December 13th, 1906, "be it understood that no debts are owing by any relative" what she meant was "I release all debts that may be owing to me at the time of my death by persons entitled under the statute of distributions and by those who have married such persons?" So to hold would indeed be carrying construction to a fantastic limit. The assumptions would be—*first,* that when she said no debts *are* owing she meant not then owing but owing when she died; *second,* that although she said no debts are owing, what she meant was, that if debts should be owing at her death she released them; *third,* that debts owing by relatives not entitled under the statute of distributions she did not release; or, if this be regarded as too strained, that she released every debtor who might establish relationship to the twentieth or thirtieth degree of consanguinity. I am unwilling to draw from language so simple and so intelligible a series of implications so purely conjectural. Looking at

the whole clause, it would seem as if it might have occurred to testatrix at the time she was providing for a substituted executor that it might avoid trouble and inquiry on his part if she should let him know that, at that time, her relatives owed her nothing.