Circuit Court of Appeals, Fourth Circuit.
October 16, 1928.

No. 2734.

Robert Ruark, of Raleigh, N. C. (Ruark & Fletcher, of Raleigh, N. C., and Hines, Kelly & Boren, of Greensboro, N. C., on the brief), for appellant.

T. C. Bowie, of Jefferson, N. C., and T. B. Higdon, of Atlanta, Ga. (A. W. Horn, of Franklin, N. C., and Broadhurst & Robinson, of Greensboro, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge. This is an appeal from a judgment of the District Court of the United States for the Middle District of North Carolina in an action at law brought by the Southern Surety Company, an Iowa corporation, appellant and plaintiff below, against the appellees, who were of the defendants below, and others. The parties will be referred to here as plaintiff and defendants.

The complaint alleged that one of the defendants, J. T. Plott, entered into a contract in his own name with the state highway commission of the state of North Carolina for the construction of a certain road in that state, and that, to guarantee the performance of said contract, Plott was required to and did execute a bond, with the plaintiff as surety thereon; that Plott, in order to obtain said bond, made a formal application in writing to the plaintiff; that prior to and at the time of the execution of the contract, bond, and application, J. T. Plott, Will Higdon, R. C. Brooks, and R. L. Scott, were partners engaged in the business of constructing roads and doing general contracting work in North Carolina, under the firm name of Plott, Higdon & Co.; that Plott, in executing the contract, bond, and application, executed same as partner and agent of the partnership, and that the partnership ratified Plott's action; that construction of the road was undertaken by the partnership, and continued until it became apparent that a heavy loss would be sustained, at which time the contract was abandoned, and the plaintiff, as surety, was forced, on demand of the highway commission, to complete the contract at great loss.

Plott became bankrupt, and this action was brought against all the partners to recover the amount lost by plaintiff as surety. M. W. Gant, the trustee in bankruptcy of Plott's estate, was also made a party defendant.

A demurrer was filed on behalf of the defendants Higdon, Brooks, and Scott, which demurrer was sustained by the court below, and a judgment entered for them, from which action of the court this appeal was taken.

The principle that a surety can look only to the principal who signs the bond is supported by numerous decisions.

"No person can be a principal in a bond, who has not sealed it, either by himself, or by some person authorized to do it for him. If the bond be executed by a third person, in the character of owner or consignee, he is the principal, though he be not in truth the owner or consignee. If the factor make the entry in his own name, the bond will, of course, be in his own name, and he will be the principal; if made in the name of the owner or consignee, he in whose name it is made, will be principal, if the bond be executed by

or for him." Childs v. Shoemaker, 1 Wash. C. C. 494, Fed. Cas. No. 2,681.

"One of the firm gave his bond for the duties, and the plaintiff became surety on that bond, at the request of the principal in the bond, without any notice to, or any request of the defendant. The plaintiff then became surety, not for the defendant, but for the principal in the bond. When it was paid it was money paid for the proper debt of the same party. It was in no just sense money paid for the defendant, because he was not a debtor upon the bond, to which the obligation or suretyship attached. He might be beneficially interested in the payment; but that is not sufficient to create a legal obligation to pay it. It makes no difference, that the goods were shipped on account and risk of the defendant, and so appeared upon the bill of lading and invoice produced at the custom-house. That did not, as between the parties to the custom-house bond, make the bond less the proper debt of the consignee. The consignee was still by law required to give the bond, and contract a personal obligation to pay the duties; and the surety was his security for the payment of the same. There was no privity between him and the defendant in respect to that obligation. It is common learning, that, if A owe a debt to B, C cannot, by paying it without A's request or co-operation, create an obligation on the part of A to repay it to him. And if C becomes surety for D, for the proper debt of A, C cannot, by the mere discharge of the debt, entitle himself to recover over against A. The reason, in both cases, is the same. There is no privity between the parties." Knox v. Devens, 14 Fed. Cas. No. 7905, 801.

"Barber, one of the partners, executed bonds to the United States, for duties on goods imported, on account of the co-partnership, and as their property, and Tom became surety on the bond. The court established this principle—that the claim of the United States against the copartnership became extinguished by the bond of the individual partner, who was alone responsible, and that the surety, who had paid the money, had a right of action against the partner only who had signed the bond." Sluby v. Champlin, 4 Johns. (N. Y.) 461.

"These cases seem to establish a general principle, that in point of law the contract must be joint in order to charge thereon the partnership; and that it is not sufficient, to make it a joint contract, that the money was applied to a partnership debt, provided it was not advanced upon a treaty with the partnership, but was advanced to one of the partners and upon his separate security." Foley v. Robards, 25 N. C. 177.

See, also, Woodcock v. Bostic, 128 N. C. 243, 38 S. E. 881; Krafts v. Creighton & Woodville, 3 Rich. (S. C.) 273; Moore v. Stevens, 60 Miss. 809; Asbury v. Flesher, 11 Mo. 610; Morgan v. Scott, Minor (Ala.) 81, 12 Am. Dec. 35; Wood v. Martin, 115 Ga. 147, 41 S. E. 490; Floyd v. Wallace, 31 Ga. 688.

In the case of the Chamberlin-Hunt Academy v. Port Gibson Mfg. Co., 80 Miss. 517, 32 So. 484, involving a contract for the construction of a building, the court said:

"It is clearly manifest from this record that the academy contracted with Samuel W. Rothrock by name as an individual. The written contract itself shows this, and it nowhere shows that it made any contract with him as agent, or had any sort of notice of any agency. Upon a breach of the contract, no one could contend that the academy could hold liable anybody but Samuel W. Rothrock. This would be true if the construction company was in fact a simple partnership, and Samuel W. Rothrock a partner, because the contract was with the individual."

Bail of a partner, who paid the judgment against him for a partnership debt, cannot be subrogated to the rights of a judgment creditor against the other partners. Bowman v. Blodgett, 2 Metc. (Mass.) 308. Textwriters on the subject of suretyship also support this general principle.

In Childs on Suretyship (1907 Ed.) 300, this statement is made: "The mere fact that a principal is jointly liable with others for the debt will not give a surety any right against such others, if they are not actual parties to the contract."

Pingrey on Suretyship, § 179, says: "The surety can look for reimbursement only to the rights of his principal, and not to a stranger. So where a surety is on the bond of one of several partners, he cannot look to the partnership for indemnity, if he has to pay the debt, though the bond was given to secure a partnership debt. A surety cannot charge any other person as his principal except the one who was principal at the time of making the contract of suretyship. No privity can exist between the parties except that which arises on the bond or contract, and an implied assumpsit cannot arise beyond the parties on the bond or in the contract."

"A contract of guaranty or suretyship, by which one person undertakes to be responsible for debts to be contracted by another, does not ordinarily include debts contracted by the latter jointly with a third

person, as partners or otherwise." Waterman v. Alden, 143 U. S. 196, 12 S. Ct. 435, 36 L. Ed. 123.

"Where the obligation exists only in virtue of the covenant, its extent can be measured only by the words in which it is conceived." Sumner v. Powell, 2 Mereval, 35; United States v. Price, 9 How. 83, 13 L. Ed. 56.

"Since a bond is essentially an instrument under seal, the common law limitation on the implied authority of partners to bind their associates by sealed instruments applies to the execution of bonds, and the general rule is that a bond given by one member of a firm for a partnership debt is binding only on the party executing the bond, and not on the partnership. * * * *" 20 R. C. L. 897.

In the case of United States v. Ames, 99 U. S. 35, 25 L. Ed. 295, one of the syllabi reads as follows: "Where the property was partnership property, and the release was obtained for the benefit of the partnership, those partners who did not sign the bond cannot be rendered liable for its value."

In the opinion in the same case, Mr. Justice Clifford says: "Although the claimant is the sole principal in the bond, yet the allegations in the bill of complaint are that the other two partners were equally interested in the property, and that the claimant procured the release of the property, for the benefit of the co-partnership; and the complainants allege that the transaction should be viewed in all respects as if all the members of the firm had been principals in the bond, inasmuch as the property when released went into the possession of the firm and was sold for the benefit of all the partners. * * * Neither of the other partners signed the bond but the complainants allege that the firm directed the claimant to give the bond for and in the name and style of their said partnership as obligors; to which it may be answered that if the firm gave such directions the claimant did not follow them, as the bond set forth in the record as an exhibit to the bill of complaint shows that it is the individual bond of the alleged senior partner. Nor do the complainants pretend that the other partners ever signed the instrument, but they contend that the demurrer admits everything which they have alleged."

See, also, McNaughten v. Partridge, 11 Ohio, 223, 38 Am. Dec. 731; Doe v. Tupper, 4 Smedes & M. (Miss.) 261, 43 Am. Dec. 483.

The early rules as to the rights of a surety to recover were based largely on the fact that questions of suretyship usually involved accommodation sureties. In recent times there has developed a class of compensated sureties, with companies doing an extensive surety business for profit and the rules that so generally favored an accommodation surety have necessarily, and as we see it justly, been modified in the direction of being less lenient with the surety. Surely the equities of a situation would be less in the case of a compensated surety than in the case of an accommodation surety. Surety companies sell their credit for a stipulated price, and in equity should be on the same footing as a merchant who sells his goods on credit for a price that pays him a profit.

The record is silent as to whether the plaintiff knew of the existence of the alleged partnership at the time of the execution of the bond, and as to whether the state of North Carolina knew of it when the contract was made with Plott. While the complaint alleges the existence of the partnership, it is silent as to what knowledge the plaintiff or the state of North Carolina had as to that fact. Here the complaint is fatally defective, because if the surety knew of the existence of the partnership and elected to deal with Plott individually, it cannot afterwards recover from the other partners.

"If a party is informed that the person with whom he is dealing is merely the agent for another, and prefers to deal with the agent personally on his own credit, he will not be allowed afterwards to charge the principal. * * * *" Ford v. Williams, 21 How. 287, 16 L. Ed. 36.

A similar rule, for similar reasons, applies to negotiable instruments, and by the same reasoning would apply to the bond in this case. "Persons dealing with negotiable instruments are presumed to take them on the credit of the parties whose names appear upon them; and a person not a party cannot be charged upon proof that the ostensible party signed or indorsed as his agent." Footnote to Ford v. Williams, supra, 16 L. Ed. 37.

The rule of law applying in the case of an undisclosed principal or partner cannot apply here, even if applicable in the case of principal and surety, because in the complaint there is no allegation to support it. Where one, with knowledge of a partnership elects to contract with an individual member of the partnership upon that member's exclusive credit, even though the contract is for the benefit of the partnership, the member contracted with and he alone is liable under the contract. National Bank v. Cringan, 91 Va.

347, 21 S. E. 820. See, also, 38 Cent. Dig. col. 666, §§ 101, 102.

Were the plaintiff here seeking to be subrogated to any rights of the state of North Carolina, it could not recover from any of the defendants, other than Plott, because it was with Plott, and Plott alone, that the state contracted. Had the alleged partnership been indebted to the state of North Carolina, and had the state accepted the promise of Plott alone to pay the debt, the partnership obligation would have been merged in the sole obligation of Plott; and had a compensated surety given bond for Plott's payment of the debt to the state, that surety could, in case of default, have recovered only from Plott. This rule, if it would apply to an existing debt, would also apply to any liability that might arise in the future growing out of a contract with the state made by Plott individually, for the performance of which contract the plaintiffs gave bond for Plott.

It is strongly urged on behalf of the plaintiff that the bond given for Plott was not necessary to be executed under seal, and was not technically a sealed instrument, and that the seal should be treated as surplusage. The statutes of North Carolina (section 15 of chapter 2, Public Laws of 1921) provide that all contracts let by the state highway commission should be let under the rules and regulations prescribed by the commission. The commission, under this authority, required the successful bidder to execute a bond for the faithful performance of the contract. It is unnecessary to cite authorities to the effect that a bond is necessarily a sealed instrument. 4 R. C. L. 47. The bond in this case was executed under seal. But in our opinion the question as to the seal is immaterial because the plaintiff could not recover from any of the defendants other than Plott, whether the contract of suretyship in writing had been executed under seal or otherwise.

While this is an action at law, attorneys for the plaintiff contend that, if the complaint makes a case for the consideration of a court of equity, the cause should be transferred to the equity side of the court, and there proceeded with as equity and justice may require. Under the authority of Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, we are of the opinion that this is correct, yet, in view of the conclusions reached by us as above stated, the plaintiff is not entitled to recover against any of the defendants other than Plott, either at law or in equity.

"Courts of equity may compel parties to execute their agreements, but they have no power to make agreements or to alter those which have been understandingly made. * * * " United States v. Ames, supra.

The complaint did not make a case that would allow the plaintiff to recover from the defendants Higdon, Brooks, and Scott, and there was no error in the action of the judge below in sustaining the demurrer.

The judgment is accordingly affirmed.