In re Estate of Ella M. Trott.

Harry Trott, Appellee, v. Maralee Auten Hanson et al., Appellants; Stella Smith and Delbert Hanson, Executor.

No. 45340.

November 19, 1940.

A. A. Zimmerman, for appellants.

Pike, Sias & Butler, for appellee.

Worthen & Taylor, for Delbert Hanson, Executor, Defendant.

HALE, J.—Petitioner Harry Trott, or Harry J. Trott, asks that items two and three of the will of his mother, Ella M. Trott, be construed so as to include, as intended by the testatrix, in addition to other debts admittedly cancelled by the will, the cancellation of petitioner's obligation to her on a $2,400 real estate purchase-money mortgage note, executed and delivered to her by said petitioner and his wife; and as giving him a $200 bequest in addition thereto. The will in question was executed by Ella M. Trott on March 24, 1937. The provisions of the will which are in controversy are as follows:

"ITEM TWO. I have heretofore advanced various sums to my son Harry Trott and my daughter Stella Smith at different times, notes for some of which advances having been executed by them and delivered to me. I hereby forgive and cancel all such indebtedness of each Harry Trott and Stella Smith to me and direct that such indebtedness of them and each of them to me shall not be considered any part of my estate.

"ITEM THREE. In addition to the forgiveness of the indebtedness of Harry Trott and Stella Smith to me, I give, devise and bequeath to each of them, Harry Trott and Stella Smith, the sum of Two Hundred Dollars.

"ITEM FOUR. I direct that all the rest, residue and remainder of my estate, be divided into two equal shares. One of such two equal shares, I hereby give, devise and bequeath to Maralee Auten Hanson and Lucile Auten Lorenze, or their heirs at law, share and share alike, per stirpes and not per capita; and the other of said two equal shares I give, devise and bequeath to my grandson LeRoy Charles Trott, the son of Charles C. Trott, and his heirs at law."

At the time of the execution of the will Harry Trott owed his mother two notes amounting to about $500, for sums advanced to him. Before the will was made, Ella M. Trott had sold 80 acres to Blanche Trott and Harry Trott, her husband, for $6,000. $25 of the purchase price was paid on January 12, 1937, and on February 19, 1937, an additional $2,600 was paid by them and used by testatrix in paying off an existing mortgage on the farm. At that time (February 19, 1937) testatrix executed a deed for the farm to Blanche Trott and Harry J.

Trott, wife and husband, which deed was delivered to the grantees on April 10, 1937, and the purchasers then paid an additional $975, and for the balance of the purchase price gave testatrix their joint $2,400 note, due in five years, with interest at 4 percent per annum, payable semiannually, together with a first mortgage on the 80-acre tract. This mortgage was filed immediately. Stella Smith, the daughter named in the will, prior to the making of the will was indebted to her mother (the testatrix) in the sum of $2,500 and interest. She filed an answer disclaiming any interest in the proceeding and asked dismissal of the petition as to her. Delbert Hanson, executor, filed no answer and has taken no appeal.

Defendants-appellants concede that the notes, other than the $2,400 note, of petitioner-appellee, held by the testatrix at the time she executed the will, are cancelled by it and that she intended giving him $200 in addition to cancelling the notes she then held for money theretofore advanced to him. They deny that there is any uncertainty or ambiguity in the will calling for a construction, and allege that the $2,400 mortgage note is not a sole obligation of petitioner but is owing jointly by him and his wife; that such note does not represent and was not given for any sum advanced to him by the testatrix, but was given to secure a part of the purchase price of a farm deeded to him and his wife Blanche; that the note was executed and delivered subsequent to the execution of the will; and make general denial.

It will be seen from the foregoing that the only controversy is as to whether the $2,400 mortgage note was included in the indebtedness intended to be cancelled by item two of the will. The district court entered a decree sustaining petitioner's contention, holding that the will included the said note, and cancelled the same as to Harry Trott, and ordered the payment to him of the $200 legacy. From this decree this appeal is taken.

In considering the question as to whether or not the mortgage note was included in the debts to be cancelled, we should keep in mind the dates of the various transactions as above set out, and which for convenience are here repeated—that is, the sale of the farm for $6,000 in January 1937, when the first pay-

ment of $25 was made; the second payment to testatrix of $2,600 and the execution of the deed to the 80 acres, both on February 19, 1937; the execution of the will on March 24, 1937; the payment of an additional $975, the delivery of the deed, and the execution of the note and mortgage for $2,400, all on April 10, 1937.

Defendants contend that the court erred in the admission of testimony as to various matters. Jacob L. Holland, who drew the deed, testified to conversations with the testatrix, which was objected to on the ground that it was an attempt to introduce extrinsic evidence to aid in the construction of a will which was not ambiguous, and as conclusions. The statements of the witness were, however, not conclusions, but an attempt to give the substance of the conversations. As such they were admissible. Thompson v. Romack, 174 Iowa 155, 156 N. W. 310; Walker v. Camp, 63 Iowa 627, 19 N. W. 802; State v. Donovan, 61 Iowa 278, 16 N. W. 130. Other objections now made were not made to the introduction of the testimony.

Complaint is made by defendants that the court erred in the introduction of any extrinsic evidence for the reason that the language used in the will is plain and unambiguous. Cases cited by defendants are to the effect that where the language is clear there is no need of construction and rules of construction are inapplicable. In re Estate of Thomas, 220 Iowa 50, 261 N. W. 622, is cited, which, among others cited, it is argued supports this rule. Defendants also argue, citing Gilmore v. Jenkins, 129 Iowa 686, 106 N. W. 193, that it is only when the terms of a will are not clear that collateral evidence may be received to ascertain its intent. Cases cited in support of these propositions are: In re Estate of Etzel, 211 Iowa 700, 234 N. W. 210; Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261; In re Holdorf's Estate, 227 Iowa 977, 289 N. W. 756; Fulton v. Fulton, 179 Iowa 948, 162 N. W. 253, L. R. A. 1918 E. 1080; Anderson v. Anderson, 227 Iowa 25, 286 N. W. 446; Bell v. Bell, 223 Iowa 874, 273 N. W. 906; Boehm v. Rohlfs, 224 Iowa 226, 276 N. W. 105; In re Estate of Bybee, 179 Iowa 1089, 160 N. W. 900; Scott v. Scott, 137 Iowa 239, 114 N. W. 881, 23 L. R. A., N. S., 716, 126 Am. St. Rep. 277; Mann v. Seibert, 209 Iowa 76, 227 N. W. 614. The substance of the holding in all these cases is that the will need only be con-

strued in order to ascertain the intent of the testator, and that where the language is clear as to intent no construction is necessary. The intent, however, may be clear, but in the Gilmore case, supra, 129 Iowa 686, 691, 106 N. W. 193, 194, we think the true rule is expressed:

"Primarily, the testator's intent is to be gathered from the will itself. Parol evidence cannot be received to give a will operative elements, language, or provisions not in it before; for such testimony is only admissible for the purpose of affording light whereby what is in a will may be read, understood, and applied."

In the case of Boehm v. Rohlfs, supra, cited by defendants, there was little question as to the meaning of the language of the will. The question of whether the devisee had attained his majority under a marriage in another state was, however, of importance in determining the application of the plain language of the will and extrinsic evidence was necessarily admitted.

The language used in the case of Pring v. Swarm, 176 Iowa 153, 157 N. W. 734, cited by petitioner, we think states the rule correctly. On page 159 of 176 Iowa, page 736 of 157 N. W., of that case, the court says:

"It is argued that the court was not authorized to consider parol or extrinsic evidence in aid of the construction of the will, and that the lands claimed by Ada J. Byers and James T. Oxley, in Section 6, Township 81, Range 21, should have been held to be intestate property. In support of this claim, principal reliance is placed on the case of Fitzpatrick v. Fitzpatrick, 36 Iowa 674. The substance of that holding is that equity will not undertake to reform a will upon parol evidence, a proposition of law which may be accepted without depriving the court of authority to hear and consider parol evidence upon the construction of a will. Chambers v. Watson, 56 Iowa 676, 678, [10 N. W. 239]. In that case, while re-affirming the ruling of the Fitzpatrick case, the court distinctly suggests that if, instead of attempting to reform the will, the party attacking it had offered oral evidence of facts and circumstances tending to show what property the testator had in mind, the will might have been held sufficient to pass the title. In this connection the court says: 'It is always competent to supplement the language of the will by parol evi-

dence so far as is necessary to apply the language of the will to the object or person intended.' "

The foregoing case was cited and approved in Wilmes v. Tiernay, 187 Iowa 390, 393, 174 N. W. 271, 272, and Hoefling v. Borsen, 190 Iowa 645, 648, 180 N. W. 750, 752.

The will in the case at bar did not in any way specify just what constituted the ".various sums" mentioned in the will of Ella M. Trott. The will itself is sufficiently clear that such indebtedness is intended to be forgiven and cancelled. But the court could not determine without the aid of extrinsic evidence the items that constituted the debts. We think that testimony that bore upon that question was properly admissible, and that the rule above quoted, that it is competent to supplement the language of the will by parol evidence so far as it is necessary to apply the language of the will to the object or person intended, applies here for the purpose of identifying the debts intended.

But defendants insist that the testatrix did not intend by items two and three of her will to cancel the $2,400 purchase money now evidenced by a note for that amount; that the note was delivered after the execution of the will, and that the court erred in so holding and in ordering the cancellation of petitioner's indebtedness on such note, for the reason that the evidence is insufficient to authorize such a holding. Much of defendants' argument as to the objection here raised is not applicable to the facts in the case, or else relates to the burden of proof. The will itself, after the nature and time of contracting the indebtedness is disclosed, indicates what shall be done with the indebtedness. This is supplemented by testimony tending to point out the debt intended. We have called attention to the dates of the various transactions prior and subsequent to the execution of the will. The purchase of the farm in January, with the execution of the deed on February 19, 1937, created an indebtedness. The amount of that indebtedness was subsequently reduced, and the balance evidenced by a note secured by a mortgage, but at the time of the execution of the will that debt existed. Neither party claims that the rule that a will speaks from death should here apply, but base their arguments upon the date of its execution. At the time of

such execution the debt upon which petitioner was bound existed, and may be presumed to have been in the mind of testatrix when she signed the will. That the form of the debt was changed by evidencing such debt by a note, would not change its character as indebtedness. By item two testatrix speaks of various sums advanced, "notes for *some* of such advances having been executed," and later directs that "such indebtedness" shall be forgiven and cancelled, and shall not be considered any part of her estate; and in item three she again speaks of the indebtedness due her, and adds a bequest to each of her children mentioned in the two items. Applying the ordinary meaning of the language used to these two items, we are convinced that it covered all indebtedness to her of both Stella Smith and Harry Trott, and that the court was correct in so holding. Neither party argues that the word "advances" should be considered in the technical sense of "advancements," but some stress is laid on the use of the word as tending to negative the idea of the purchase price of the farm being included in the indebtedness which was cancelled. But the word in common usage, or according to its meaning in law, includes loans and gifts. 2 C. J. S. 496.

Defendants, however, insist that the cancellation of the joint debt of Harry Trott and his wife could not have been intended, since a gift of debts owed by a person to the testator will not, in the absence of other evidence of intention, include debts due from the beneficiary and another jointly. But as we have stated, there was not an absence of other testimony which was properly admissible. The court held, and we think correctly in view of all the evidence, that Harry Trott's liability on the $2,400 note was included in the indebtedness to be forgiven and cancelled.

Under the facts shown in the case we conclude that the ruling of the court was correct and its order and decree should be and is affirmed.—Affirmed.

RICHARDS, C. J., and STIGER, SAGER, BLISS, OLIVER, and MILLER, JJ., concur.