ESTATE OF ARGUE: CATE, Appellant, v. ARGUE, Executor, Respondent.

*September 8—October 7, 1958.*

For the appellant there was a brief and oral argument by *William R. Curkeet, Jr.,* of Madison.

For the respondent there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *G. Burgess Ela.*

BROADFOOT, J. In construing the will under the applicable rules of law the trial court indicated there were three possible constructions so far as the $7,000 note was concerned: (1)

The testator intended to release both Cate and Mrs. Nagel from the obligation; (2) the testator intended to release Cate but not Mrs. Nagel; (3) the testator intended to release neither and the entire note is due to the estate.

The inventory in the estate, which included the two notes of Harold Cate dated March 24, 1947, and the $7,000 note, amounted to $14,467.11. No other provision was made in the will for Harold Cate except that contained in paragraph "Third." By another provision of the will Mrs. Nagel was bequeathed one fourth of the residue of the estate. The balance of the estate was bequeathed to other nieces and nephews.

It was conceded upon this appeal that this is a case of first impression in Wisconsin. In fact there seem to be few cases involving the precise issue. The leading case on the subject appears to be *Waterman v. Alden*, 143 U. S. 196, 12 Sup. Ct. 435, 36 L. Ed. 123. In commenting on that case the trial court said:

"In that case, the testator forgave debts due from his brothers and sisters. After executing the will, testator loaned money to a partnership in which one brother owned a three-fourths interest and a stranger the remaining one fourth. The United States supreme court held that while the testator intended to forgive debts due from his brother, he did not intend to forgive obligations due from a stranger; nor would it be consistent to forgive the brother's share of the liability and enforce the liability of the stranger to the estate because he directed that the notes should be delivered to the makers; nor would it be consistent to turn the note over to the indebted brother, because the stranger's liability would then inure to him alone and not to the other brothers and sisters. The court concluded that the notes were enforceable against both the brother and his partner."

The trial court also referred to *Richardson v. Richardson,* a Vermont case reported in 111 Vt. 240, 11 Atl. (2d) 227. In 96 C. J. S., Wills, p. 211, sec. 792, it is stated:

"In order to release a debt the provision indicative of such an intent should be clear and unambiguous, since a clause in a will, releasing indebtedness, is strictly construed. A bequest of all personal property has been construed to include debts of the legatee owing to the testator. Ordinarily, the release of a debt will not include joint or partnership debts."

In 4 Page, Wills (lifetime ed.), p. 455, sec. 1567, it is stated:

"A release of debts due from a designated debtor does not, *prima facie*, include debts for which he is jointly, or jointly and severally, liable."

The trial court applied the rule of strict construction. In its memorandum decision the court said:

"The will bequeaths to Harold Cate the notes due 'from him (Cate) to me (testator).' Strictly speaking, the note in question was not due on the date of death, nor was it an obligation owed by Cate alone. It further provides that the note be null and void 'as chargeable against him,' and that it be destroyed. If the note were destroyed, it would wipe out Mrs. Nagel's obligation. There is no evidence that testator intended such a result.

"Applied to the question before the court, the clause is ambiguous, and a strict construction militates against release of the joint obligation."

The appellant attempts to distinguish the facts in the *Waterman Case* from the present case by showing that one of the parties who executed the joint note was a stranger while in this case the makers of the $7,000 note were a niece and a nephew. He argues that if both of the signers in the *Waterman Case* had been relatives the United States supreme court would have arrived at a different result. He further contends that by giving all of the words of the will their ordinary and usual meanings the note should be destroyed and neither of the makers held liable thereon.

We cannot agree. The testator's plan of distribution is clear from the language of the entire will and to destroy practically half of the assets of the estate by a destruction of the note would distort the testator's evident plan and in effect rewrite his will.

As a second contention the appellant contends that by applying the ordinary and usual meaning to the language of the will the obligation of the appellant could be canceled, leaving Mrs. Nagel obligated to pay one half thereof. He calls attention to sec. 269.53, Stats., which provides that the release of one joint debtor discharges only the portion of the debt which he in equity should pay. He states that at the time of the decision in the *Waterman Case* there was no such federal law, or again the United States supreme court would have reached a different result.

This section of the statute refers only to the release of a joint debtor. Without going into the distinction between joint debtors and joint and several debtors we will state that there is a distinction, and the application of the joint-debtor statute might lead to a result wholly at variance with the intention of the testator as evidenced by the language in his will.

Finally, the appellant contends that the language is clear that "all notes or other evidence of indebtedness be destroyed." It is argued that this is a clear direction to the executor to take that step, and since the executor has not done so, equity requires that he should desist in any effort to collect the note, particularly from the appellant.

The trial court properly construed the will under the applicable rules of law and its determination must be affirmed.

*By the Court.*—Order and judgment affirmed.

MARTIN, C. J., took no part.