819 A.2d 26

IN THE MATTER OF THE ESTATE OF DIANE PASSOFF
AND THE DIANE PASSOFF LIFE INSURANCE
TRUST DATED JANUARY 10, 1984

Superior Court of New Jersey
Chancery Division

November 6, 2002.

*Christine A. Grehlinger*, and *Raymond G. Console*, for plaintiff Raymond G. Console, substitute executor of the Estate of Diane Passoff and plaintiff Louis German, trustee of the attorneys, Diane Passoff Life Insurance Trust dated January 10, 1984, (*Cozen O'Connor*, attorney).

*Donald R. Ambrose*, Red Bank, for defendant, Nina Kfare (*Zager, Fuchs & Ambrose*, attorneys).

FISHER, P.J.Ch.

The fiduciaries of the Estate of Diane Passoff and the Diane Passoff Life Insurance Trust seek advice and directions. Their request poses the vexing question of whether a Will's forgiveness of a debt may be avoided through reformation when the estate is found insolvent and incapable of paying any specific bequests.

The facts—which are undisputed—reveal that Diane Passoff ("decedent") died on December 21, 1999, leaving a Will dated June 21, 1999 ("the Will"). She was survived by three daughters, Michelle Passoff, Cindy Urken and Nina Kfare. Michelle Passoff

has no children; Cindy Urken has two children (Nicole and Ross) and Nina Kfare has two children (Danielle and Rachael).

The Will's third paragraph bequeaths $50,000 each to Nicole, Ross, Danielle and Rachael. The fourth paragraph directs that any balance due under the Mortgage Note from Perry Clifford Kfare and Nina Passoff Kfare to me dated June 30, 1993 in the original principal amount of One Hundred Eighty Thousand Dollars ($180,000.00) shall be discharged as a bequest to NINA KFARE.

At the time of death, Nina Kfare ("Nina") was indebted to decedent on this mortgage note in the amount of $162,712. The fifth paragraph bequeaths $200,000 to be held in trust for the benefit of Michelle Passoff.

The substitute executor and the trustee ("plaintiffs") contend, and are not contradicted, that the "forgiveness of the balance of Nina Kfare's mortgage and the $200,000 bequest to be placed in trust for Michelle Passoff were intended by Decedent to partially offset gifts made by Decedent to Cindy Urken and her family during Decedent's lifetime." These facts, as well as the fact that decedent gave equal shares of her residuary estate to her surviving children, strongly suggests decedent's probable intention, at the time of her death, to equalize the beneficence she had shown her children both before and after her death.

A life insurance trust ("the Trust") created by decedent also treats her three children equally. In addition, two trust provisions acutely bear upon the issues at hand. First, the trustee was authorized, in his absolute discretion, to make loans or advancements to the estate's personal representative in order "to provide funds with which to pay claims, taxes, administration expenses, or the indebtedness of" the estate. *Amended Complaint*, Exhibit B, ¶ 6. Second, the Trust's spendthrift provision indicates that, "to the extent permissible by law," the income and corpus "shall be in no way or manner subject or liable to anticipation, sale, assignment, pledge, debts, contracts, engagements, orders or liabilities and shall not be subject or liable to levy, execution, attachment, sequestration or seizure under any legal, equitable or other process." *Id.*, Exhibit B, ¶ 10.

The impact of these Will and Trust provisions must be examined in light of the events which preceded plaintiff's request for directions and instructions.

There were, it is alleged, substantial non-probate assets which passed to the beneficiaries for which the estate bears the responsibility for paying taxes. Plaintiffs allege these taxes amounted to approximately $2,280,000. Strapped for cash, the estate borrowed $2,200,000 from the Trust to pay these taxes and has been repaying the Trust as it liquidates assets. According to plaintiffs, the estate will be unable to repay all it has borrowed. In addition, the estate will be unable to pay the four $50,000 bequests to decedent's grandchildren or fund the $200,000 trust for the benefit of Michelle Passoff; the estate also will have no residuary to divide among decedent's three children.

As a result, plaintiffs believe it is unfair to Michelle and Cindy, and inconsistent with decedent's probable intentions, to give effect to the Will's debt forgiveness. Moreover, plaintiffs seek not only an order that Nina remain obligated on the mortgage note but also a direction that the debt be satisfied through the utilization of trust funds due Nina. The Trust, according to the amended complaint, has $500,000 to equally distribute among the three beneficiaries. Accordingly, plaintiffs seek the approval of reducing Nina's share of the Trust by the amount due from Nina and her husband to the estate on the mortgage note.

In the amended complaint plaintiffs describe the vexing issue at hand in the following way:

The Kfare mortgage is an asset of the Estate and, since the Estate is insolvent, the forgiveness of the mortgage is a bequest which is subject to abatement and which did abate. Since the forgiveness had already been given effect, the forgiveness needed to be corrected. In other words, it needed to be undone and the $162,712 bequest needed to be drawn back into the Estate. The Executor and the Trustee decided to undo the bequest by [making an offset] which, in effect, redistributed the $162,712 received by Nina Kfare evenly among Michelle Passoff, Cindy Urken and Nina Kfare.

In response to this proposed reorganization of what the instruments expressly require, Nina argues that, with the probating of the Will, the mortgage debt instantly vanished and, even if not,

the spendthrift provision of the Trust prohibits the offsetting of Nina's share of the Trust as sought by plaintiffs.

Certainly, a resolution of this issue would greatly benefit from any available extrinsic evidence illuminative of the decedent's intentions. However, the parties have recognized that the only information available to decipher those intentions consists of the instruments themselves. Accordingly, the meaning of the instruments must be ascertained through a consideration of the language employed, examined in the context of the overall circumstances and viewed through the prism of the common law's experiences in similar situations.

As a general matter, it is well-accepted that a testator may discharge a debt, "either by express provisions in his will, or by fair implication from its language when read in the light of surrounding circumstances." Bowe–Parker, *Page on Wills* (1962), Vol. 6, § 57.1 at 329. This notion upon which the parties have predominantly focused, however, merely describes the analysis's starting point. The solution to the problem at hand cannot be gleaned without a deeper search into the long-standing, yet cloudy, principles of will interpretation.

Indeed, in considering the impact of a testator's debt forgiveness, it is helpful to contemplate the many difficulties which have arisen in the application of various will provisions in diverse circumstances. Research reveals numerous decisions wherein the significance and meaning of a testator's similar directions have been considered. For example, courts have determined whether a debt incurred after execution of a will should be included in a general forgiveness of debts,[1] whether the forgiveness of a debt to

---

[1] It is generally understood that a general forgiveness of debts would include debts incurred after execution of the will. *See, May v. Williams*, 208 *Ky.* 232, 270 *S.W.* 804 (1925); *Marshall v. Motten*, 224 *S.W.* 8 (Mo.App.1920); *Trott's Estate v. Hanson*, 229 *Iowa* 506, 294 *N.W.* 777 (1940). But courts have also reached contrary results due to the particular language under examination. *See, Henderson v. Henderson*, 77 *N.J. Eq.* 317, 77 *A.* 348 (Ch.1910); *Piper v. Piper*, 27 *Ill.App.*2d 127, 169 *N.E.*2d 280 (1960). For example, in *Walls v. Walls*, 182 *Pa.*

one person should be construed as operating for the benefit of an unnamed joint debtor,[2] and whether a broad forgiveness includes only personal loans and not business investments.[3]  Other difficulties have been encountered with regard to the debtor's liability for accrued interest on a forgiven mortgage,[4] and whether the forgiveness of a monetary debt includes the estate's obligation to discharge a mortgage.[5]  Questions have arisen as to a will's impact when the debt was cancelled or satisfied prior to the testator's

226, 37 A. 859 (1897) (emphasis added), the court concluded that a later indebtedness was not discharged because the testator's will provided only "that all obligations that I may hold against any of my children for the payment of money *at this time* shall be canceled and discharged." *See also, Rogers v. Rogers,* 153 N.Y. 343, 47 N.E. 452 (1897).  In addition, the execution of a codicil after the post-will indebtedness was incurred has been viewed sufficient to discharge the later debt (even when the codicil made no mention of the debt forgiveness) because codicils are viewed as having the effect of republishing the entire will.  *See, Rhodes v. Rhodes,* 176 Ill.App. 533 (1912); *In re Allen's Will,* 111 Misc. 93, 181 N.Y.S. 398 (Surr.1920), *aff'd,* 202 A.D. 810, 194 N.Y.S. 913 (1922), *mod. on other grounds,* 236 N.Y. 503, 142 N.E. 260 (1923).

[2] The general approach has been to limit the discharge to those debts solely owed by the specified beneficiary and not to debts jointly owed by the beneficiary with others.  *See, Waterman v. Alden,* 143 U.S. 196, 12 S.Ct. 435, 36 L.Ed. 123 (1892); *Heaton v. Merchant,* 35 N.J. Eq. 561 (E. & A. 1882); *In re Argue's Estate,* 5 Wis.2d 1, 92 N.W.2d 233 (1958); *Forner v. Weidner,* 16 Ind. 198 (1861); *In re Zielinski's Will,* 193 Misc. 826, 84 N.Y.S.2d 89 (Surr.1948).

[3] It has been held that the use of a word such as "forgive," when referring to the discharging of debts, injected a personal sense to the direction and should not be interpreted as including business investments.  *Re Coghill,* 1 All Eng. 254 (1948).

[4] *See, generally, Fleming v. Carr,* 47 N.J. Eq. 549, 22 A. 197 (Prerog.Ct.1891); *First Trust & Deposit Co. v. Powell,* 84 N.Y.S.2d 75 (Sup.1948).

[5] It is generally understood that the forgiveness of a debt or money advanced would require the discharge of a mortgage which evidenced and secured such loan.  *See, e.g., Trott's Estate, supra,* 229 Iowa 506, 294 N.W. 777.  However, this general approach has been rejected when the particular language and specific references to debts in the will suggest a different result.  *See, Moeckel v. Ludwig,* 112 N.J. Eq. 437, 439, 164 A. 690 (Ch.1933) ("[w]hether complainant's mortgage was canceled by the will depends upon the construction given to the words 'any and all indebtedness' ").

death,[6] and courts have considered the effect of the debtor's death prior to the testator's death,[7] as well as numerous other unforeseen events.[8]   It is fair to conclude—as will be seen—that the consistency which may be found in these and other decisions is a healthy dedication to the particularities of the language employed, as amplified by any available extrinsic evidence, and as harmonized with the overall thrust of the decedent's estate plan.

In focusing on the particular problem posed, it is initially observed that a provision forgiving a debt will not be given effect if the estate is insufficient to pay all the decedent's debts or to pay any rights such as an elective share, or such other obligations of the estate which the testator "cannot control by will." *Page on Wills, supra,* Vol. 6, § 57.1 at 329.   That is, the estate must honor its own debts, as well as any statutory obligations, before a forgiveness of any debts may take effect.   This approach springs, no doubt, from the ancient maxim that "a man must be just before he is generous." *See, Sweney v. Carroll,* 118 *N.J. Eq.* 208, 215, 178 *A.* 539 (Ch.1935); *Horton v. Bamford,* 79 *N.J. Eq.* 356, 381–82, 81 *A.* 761 (Ch.1911).   In this particular case, there is no elective share which would be hampered or decreased by way of the debt forgiveness.   However, the estate is apparently unable to pay taxes without borrowing from the Trust.   Accordingly, to the extent the forgiveness of Nina's debt increases the amount needed to be borrowed by the estate, or renders more difficult the

---

[6] For example, a debtor who paid an obligation prior to the testator's death (but subsequent to the making of the will which forgave the debt) could not seek reimbursement after the testator's death. *Re Muller's Estate,* 183 *Misc.* 957, 49 *N.Y.S.2d* 767 (1944).  *See also, In re Todd's Estate,* 237 *Pa.* 461, 85 *A.* 843 (1912).

[7] It was held in *In re Tuck's Estate,* 171 *Misc.* 37, 11 *N.Y.S.2d* 790 (1939) that the release of the debt extended not only to the debtor but also the debtor's estate, while in *Toplis v. Baker,* 30 *Eng. Rep.* 55 (1789) it was held that the release lapsed by reason of the debtor's death.

[8] *See, Annotation,* "Construction and Effect of Will Provision Releasing or Forgiving Debt due Testator," 76 *A.L.R.2d* 1020.

repayment of any loans for that purpose, it should not be permitted.

Further support for rejecting the enforceability of the debt forgiveness here can be found in a case with some similarities—*In re Steinberg's Will*, 130 *N.Y.S.*2d 635, 638 (Surr.1954). In *Steinberg*, the will forgave a debt owed to the testator by one son; the court, however, observed that the estate was inadequate to fully distribute a legacy due another son. As a result, and—perhaps, more importantly—in light of the additional finding that the will was "saturated with a purpose of treating his two sons with absolute equality," the court concluded that the debt and the legacy should be equalized, thus allowing for a *pro tanto* reduction of the effect of the debt forgiveness.

This approach also seems consistent with *Moeckel*, where Vice–Chancellor Lewis, with the aid of extrinsic evidence, interpreted the testator's forgiveness of "any and all indebtedness to me" as not intending to require a cancellation of the mortgages underlying that indebtedness. Otherwise, the Vice–Chancellor concluded, the estate would not be able to fund the specific bequests, leading to a result which the testator neither anticipated nor intended: "[t]his would mean that the money bequests were a mere empty gesture, without any validity or effect." 112 *N.J. Eq.* at 439, 164 *A.* 690.

The specific holdings in *Steinberg* and *Moeckel* are consistent with the general approach undertaken by our courts in the interpretation of testamentary dispositions. The judicial response, in such matters, is to "ascertain and give effect to the 'probable intention of the testator.' " *Fidelity Union Trust Co. v. Robert*, 36 *N.J.* 561, 564, 178 *A.*2d 185 (1962). As the Court in *Robert* explained:

in ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances .... So far as the situation permits, courts will ascribe to the testator "those impulses which are common to human nature and will construe the will so as to effectuate those impulses." [Id. at 564–65, 178 *A.*2d 185 (quoting *Greene v.*

*Schmurak,* 39 *N.J.Super.* 392, 400, 121 *A.*2d 35 (App.Div.), *certif. denied,* 21 *N.J.* 469, 122 *A.*2d 528 (1956))]

The Court re-emphasized and even expanded this approach in *Matter of Estate of Branigan,* 129 *N.J.* 324, 332, 609 *A.*2d 431 (1992) where, over the consternation and dissent of one justice,[9] the reformation of an otherwise clear and unambiguous will was permitted because of the will's inconsistency with the testator's overriding intentions in the face of tax law changes occurring after the will's execution but before the testator's death.

In reviewing not only the Will itself but also the Trust, the court is satisfied that the estate plan is instinct with decedent's desire to equalize her beneficence among her children. This is evidenced in a number of respects: (1) decedent's children are equal beneficiaries of the residuary clause; (2) the children of all three of decedent's children are treated equally, (3) decedent's children are equal beneficiaries of the Trust; and (4) the Will's specific bequests to two of decedent's children constituted an attempt to treat all three of the children equally. That is, in forgiving Nina's debt and in providing $200,000 for the benefit of Michelle, the decedent was attempting to also offset gifts made to Cindy and her family during her lifetime and leave her children and their families on an equal footing upon her death. *See Amended Complaint,* ¶ 9.

In the interpretation of wills, a court will not only "give primary emphasis" to the decedent's dominant plan and purpose but also presume, when the facts and circumstances so suggest, that the decedent did not "intend[ ] to discriminate between the natural objects of his bounty, and a construction effecting equality

---

[9] In dissent, Justice Clifford colorfully stated: "Only prompt application of the jurisprudential equivalent of the Heimlich maneuver can save the doctrine of probable intent from today's hard-to-swallow decision. The Court says that despite its unmistakable clarity, the will of decedent, George V. Branigan, can be reformed—not explained, not interpreted, mind you, but *changed*—to permit the estate to take advantage of certain tax advantages produced by amendments to the federal-tax laws enacted after execution of the will but both before and after (with retroactive effect) decedent's death." 129 *N.J.* at 338, 609 *A.*2d 431.

between the natural objects of his bounty will be favored." *Kennedy v. Mockler*, 38 *N.J.Super.* 35, 51, 118 *A.*2d 93 (App.Div.1955). Accordingly, in the final analysis, while the Will unequivocally directs the forgiveness of the debt of Nina and her husband, it also exhibits—as *Steinberg* said, is "saturated" with—an overarching intent to treat Nina, Michelle and Cindy equally. The eventuality of the estate's insolvency, which was certainly not in the contemplation of the decedent (or else why would the specific bequests to Michelle and the decedent's grandchildren have been made [10]), constitutes a circumstance which would clearly have changed the dispositions made in the Will. This permits a reformation or modification of the Will in order that the decedent's pervading intention to treat her children equally may occur. *Accord, Branigan, supra,* 129 *N.J.* 324, 609 *A.*2d 431.

In this case, it would clearly be inconsistent with the decedent's probable intent to allow Nina to receive the economic benefit of the debt forgiveness while, because of the estate's insolvency, permitting Michelle to be deprived of the benefit of her bequest.

■ For the reasons outlined above, the estate should be freed of the Will's direction that the debt of Nina and her husband be forgiven. However, contrary to what plaintiffs urge, the immediate satisfaction of that debt from the funds due Nina from the Trust does not logically follow. The Trust clearly states in the amended complaint that its funds were not to be used in such a manner:

> To the extent permissible by law, the shares of income and principal by this Agreement given to or directed to be held by the Trustee shall be in no way or manner subject or liable to anticipation, sale, assignment, pledge, debts, contracts, engagements, orders or liabilities and shall not be subject or liable to levy, execution, attachment, sequestration or seizure under any legal, equitable or other process.

---

[10] *Accord, Moeckel, supra,* 112 *N.J. Eq.* at 439, 164 *A.* 690 (wherein the court concluded that a provision should be interpreted as not including a forgiveness of a debt because "[t]his would mean that the money bequests were a mere empty gesture, without any validity or effect").

The only fair interpretation of this provision, in light of the estate's insolvency and its impact on the other provisions discussed above, requires a conclusion that the satisfaction of Nina's debt to the estate not occur through the use of the trust benefits due Nina.

Nina's debt to the estate, while preserved through the interpretation of the Will discussed earlier, need not be accelerated. It will be what it is. There is nothing in this record to demonstrate that Nina's obligation is in default. Accordingly, while the estate may take whatever action it is entitled to by operation of the loan agreement, it has not shown an entitlement to assume that the entire debt is presently due and owing. Moreover, the spendthrift provision of the Trust prohibits the fund's use in the manner sought by plaintiffs. In this way, the dominant plan of the decedent—to treat her children equally—is served as well. It is difficult to assume, in light of the Will's forgiveness of the debt, that the decedent intended the Trust be used to satisfy that debt or that the debt should be accelerated upon decedent's death.

For the foregoing reasons, (1) the will of decedent will be ordered reformed so as to invalidate the forgiveness of Nina's debt and (2) plaintiffs' request for a direction that the trust funds due to Nina be utilized to satisfy the debt will be denied. Counsel for plaintiffs is directed to submit an appropriate order, in conformity with the above, pursuant to the five-day rule.